CARPENTER v. DETROIT FORGING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION—RELEASE— COMPROMISE OF CLAIM—REOPENING.

On petition of a servant who had received a stated amount in settlement of his claim for compensation, representing that he had entered into the agreement by reason of the representations of the adjuster who procured it that if his injury grew worse he could have the settlement reopened by the accident board and the compensation increased, it was proper for the board to increase the compensation as prayed by the claimant, who produced evidence of permanent and more serious injuries than he had supposed he received.

2. SAME—FRAUD OR MISTAKE—MISTAKE OF LAW.

Notwithstanding that the intent of the adjuster may have been good in making such representations it operated as a fraud upon claimant, who was misled as to his legal rights, and, though a settlement entered into under 2 Comp. Laws 1915, § 5458, was intended by the legislature as a final adjustment which should not be defeated by subsequent developments, claimant's mistake, induced by the other party to the contract, furnished sufficient basis for a decree in his favor.

3. SAME—MUTUAL MISTAKE—FRAUD.

A release executed by one party under a mistake as to his legal rights, which the other party caused, or induced by his representations, may be rescinded.

4. SAME—INJURY—EXTENT—SPECIFIC INDEMNITIES.

The schedule of specific indemnities (2 Comp. Laws 1915, § 5440), fixing the compensation to be awarded for the injuries therein described, contains no provision for the partial loss of a hand; the award should be made in case of partial disability under the first clause of the section. And on certiorari, where the court has reason to doubt that the board applied the correct rule, the cause will be remanded for further proceedings pursuant to the opinion.

Certiorari to the Industrial Accident Board. Submitted January 13, 1916. (Docket No. 3.) Decided March 31, 1916.

Roy Carpenter filed a petition with the Industrial Accident Board praying that a certain agreement made with the Globe Indemnity Company relative to compensation for injuries received while in the employ of the Detroit Forging Company be set aside, and for further compensation. From an order granting the prayer of said petition the respondent Detroit Forging Company brings certiorari. Reversed.

*Douglas, Eamon & Barbour,* for appellant.

*Benjamin & Betzoldt,* for appellee.

STONE, C. J. This case is here on certiorari to review the action of the Industrial Accident Board in setting aside a compensation agreement and awarding additional compensation to the employee. On September 26, 1913, the claimant was working in the shop of the Detroit Forging Company. While taking steel sockets out of a box or tray, a steel sliver entered the third finger of the right hand near the second joint. It is admitted that this was an accident arising out of, and in the course of, his employment. The wound became infected, and claimant was totally disabled for about 10 weeks. The fingers, hand, and entire arm were swollen, and as the swelling and infection subsided, they caused adhesion of muscles and tendons of the right hand, which prevented the entire closing or bending of the fingers. We shall refer later to the testimony relating to the labor performed by claimant after the accident. On the 26th of December, 1913, an agreement calling for compensation upon the basis of one-fifth of the loss of the four fingers of the right hand, that is, calling for 20 weeks' compensation, was signed by the claimant and the Globe Indemnity Company and forwarded to the Industrial Accident Board, which refused to approve the same unless 10 weeks more were added to compensate claimant for the time

he was disabled from performing any' work, on account of said injury. On January 26, 1914, another agreement was signed by said claimant and said indemnity company, by which said claimant was to receive, as full compensation, $9 per week for 20 weeks, on the basis of one-fifth of the loss of four fingers of the right hand, and in addition 10 more weeks at $9 per week for the time the claimant was unable to do any work on account of said injury. The last-named agreement was duly approved by the Industrial Accident Board on January 29, 1914, and the whole of said 30 weeks of compensation .was promptly paid to claimant. At the time claimant was injured, his average weekly earnings were $18. After the payment of 30 weeks' compensation, claimant made demand upon respondent for payment to him of additional compensation for said injury, and respondent disclaimed liability for further or additional compensation. On June 24, 1914, claimant filed a sworn petition with the Industrial Accident Board, praying that his agreement aforesaid of January 26, 1914, be set aside, and that further compensation for the above injury be awarded him. In said petition, said claimant, among other things, stated:

"(3) That by reason of the injuries to his right hand and right arm, your petitioner is unable to follow his occupation of that of polisher, and is unable to earn said wages of $18 per week, but, on the contrary, at the present time and for some time past has been unable to earn any wages whatsoever. That your petitioner is unable to make use of said right hand and arm, and he avers that the injuries to said right hand and right arm will be permanent, and that he will be deprived of the use of said right hand and arm for and during the remainder of his natural life.

"(4) Your petitioner further avers that on or about the 26th day of January, 1914, at the request and relying upon the representations of the Globe Indemnity Company, he then and there signed a certain al-

leged agreement in regard to compensation, reference to which agreement is hereby had, and which said agreement is now on file in this cause.

"(5) Your petitioner further avers that before signing said agreement, he then and there asked the representative of said Globe Insurance Company that if his said injuries, as aforesaid, continued for a longer period than anticipated, or became permanent, if petitioner would be entitled to additional compensation; that said Globe Indemnity Company, through its said representative, then and there informed your petitioner that if his injuries were more serious than at first anticipated, your petitioner would receive compensation until he would have the use of said right hand and arm, as provided for under the so-called compensation law; that said representative further stated that said agreement so to be executed was merely preliminary, and not binding upon your petitioner if said injuries continued for a longer time than contemplated by the agreement and became permanent; that said representative further stated that in such event, the Industrial Accident Board would reopen and set aside said agreement and give your petitioner such additional compensation as would properly compensate your petitioner for his injuries so sustained; that your petitioner, relying upon such various representations and believing them to be true, then and there signed said alleged agreement in regard to compensation."

On September 15, 1914, testimony was taken by deposition in support of, and in opposition to, said petition. Said claimant and his wife (the latter testifying that she was present when said agreement was made) gave testimony tending to support the claim set forth in the petition relating to the statements made by the representative of said indemnity company at the time said agreement was signed.

E. T. Pocklington, the adjuster who made the alleged settlement with claimant, testified in part as follows:

"*Q.* State whether or not you said anything to him about his hand. I think he has admitted that you did —being permanently injured at that time.

"*A.* Yes; that was the basis upon which we made the settlement. First, I started him out on the loss-time basis, paying him $9 a week, just simply because of the fact that he was disabled, and not acknowledging any permanent disability. The reason I did that was because at first Dr. Blain told me he thought there might not be any permanent disability, and that is customary anyway with all where we make payments under the compensation law, and I paid him along for probably 8 weeks, when the doctor told me that there was a permanent injury; there would be a permanent stiffening.

"*Q.* Of what, the fingers?

"*A.* Of the fingers, partial stiffening, and this reply of the doctor was made to my inquiry because I had decided myself, seeing the hand week after week, it was permanent, so I took it up with the doctor, and he said it would be permanent, and over the telephone he told me a fifth would be a fair percentage upon which to base the loss of function; and the next time Mr. Carpenter came in I told him that there wasn't any question at all but what his injury was permanent. I said, 'It may get a little better; there may be some improvement, but nevertheless it will never be like it was before, and the only thing we can do is to adjust the loss on the basis of the present condition.' 'Now,' I says to Mr. Carpenter, 'if you had lost all of those fingers, you would be entitled to compensation for 100 weeks,' and I explained that as he has already attempted to explain it, giving him the number of weeks for each finger, 'but now,' I said, 'you haven't lost all, there is considerable amount of use left,' I says, 'Is it half as bad as though you had lost all?' and he admitted that it wasn't; was quite vehement in his denial; and I said, 'Is it a quarter as bad?' No, it wasn't a quarter as bad. 'Well,' I said, 'Isn't it about, or wouldn't it be about, one-tenth part as bad?' And Mr. Carpenter allowed that it would be about a tenth, and then I said: 'If I allow you twice as much, or a fifth, you will be satisfied,' and he was perfectly satisfied; that is the way that Mr. Carpenter and I talked the matter over. It was strictly on the basis of a permanent disability, and based on the present con-

dition of the hand, and then at that time, the condition at that time, and so far as his future trouble is concerned, I told him. He asked me: 'If the hand gets stiff so I cannot do anything with it, what can I do then? And I said, 'If you should lose the hand, the entire usefulness of the hand, you will get paid for the hand. The board will see that you get paid.' I was very particular to impress upon his mind, at the time of signing the agreement, that was an agreement between us. I am very particular to see that every one who signs an agreement or settlement understand what they are signing."

From the evidence produced before the board, it found the facts to be in substance as follows:

(a) That on December 26, 1913, when the claimant and Mr. Pocklington came to an understanding or agreement that the amount of said claimant's injuries would be one-fifth of the loss of the four fingers of said right hand, said right hand was then in a splint, and that it was impossible for either party, at that time, to fully know whether there would be any permanent stiffness of the fingers or hand, or the extent of claimant's injuries, but both parties expected said injuries would be permanent to some extent, but to what extent was not then known.

(b) That on January 26, 1914, when the last agreement between the parties was signed, it was then expected by Mr. Pocklington, adjuster, that the injuries sustained by claimant were permanent, and he so informed the said claimant, and that said settlement agreement was signed by claimant upon the understanding and basis that the injuries he had received did not, and would not, amount to more than one-fifth the loss of the four fingers of the right hand, and if it afterwards developed that the injuries were more serious, the claimant would have the right to petition the board for further compensation.

(c) The board found, as a matter of fact, that the injury sustained by claimant was permanent, and affected the use of the entire hand; that the condition of claimant's hand had improved since January 26, 1914; that, however, claimant had lost 60 per cent. of the normal use of said right hand.

(d) That the evidence disclosed that on account of this injury the average weekly earnings of the claimant, from the time he was able to return to work, had been greatly decreased, and that he was, and would be, unable in the future to do metal grinding and polishing (the work which he was engaged in when injured), or other skilled work requiring the full use of both hands, and that as to common labor, he would be partially incapacitated, all on account of his injuries, and the permanent nature thereof.

(e) That the then condition of claimant's hand and arm, and his resulting disability, were due to the injury received by him September 26, 1913.

Thereafter the said board entered an order, in writing, granting the prayer of claimant, and adjudging that he was entitled to receive and recover from the said respondent, in addition to all sums theretofore received by him, compensation for 60 weeks at the rate of $9 per week; that the portion of such compensation as had accrued from the time of the stopping of payments to said claimant should be due and payable on the date of said order, the remainder thereof to be paid weekly in weekly payments, in accordance with the provisions of the workmen's compensation law, the amount thus awarded to be in full of all claims of said applicant against said respondents. Thereafter the appellant filed a motion for a rehearing, contending that the award and order of the board granted compensation on the basis of a certain percentage of the loss of the hand or arm, which loss of use was less than total loss of use of same, and that this basis was erroneous, which motion was denied.

The said board further stated, in its return to the writ, that there was no claim made upon the hearing of the matter that Mr. Pocklington, adjuster for the Globe Indemnity Company, intended to act fraudulently.

As a finding of law, said board found that under the

facts in the case the applicant was, as matter of law, entitled to 60 weeks' additional compensation.

The assignments of error are as follows:

(1) In holding that the agreement with regard to compensation was not final and binding upon claimant.

(2) In basing the award on a partial loss of four fingers of the right hand, and not on one-half the difference between claimant's average weekly wages before the injury, and the average weekly wages which he was and is able to earn after the injury.

(3) In basing the award on a partial or percentage loss of a hand instead of on the extent of disability, viz., one-half the difference between claimant's average weekly wages before the injury and the average weekly wages which he was and is able to earn after the injury.

(4) In basing the award on a partial or percentage loss of the right arm, and not on one-half the difference between claimant's average weekly wages before the injury and the average weekly wages which 'he was, and is, able to earn after the injury.

(5) In determining and ordering respondent to pay to claimant the sum of $540, in addition to the amount already paid, as further compensation for the accident and injury to claimant.

The following request was made by counsel for respondent and appellant at the hearing to settle the return to the writ herein:

(1) That the return state and show upon what clause and provision of Act No. 10, Extra Session 1912, the award arrived at by the board, in this case was determined and based.

(2) That the basis of the award be shown in the return to the writ. Which request the board refused, for the reason that the finding of law máde by it, and set forth in the return, is sufficiently definite.

Counsel for appellant state that there are but two general questions presented in the case:

(1) Did the board err in setting aside the settlement agreement of January 26, 1914?

(2) Was the award based on a percentage loss of the right hand?

1. Upon the first point counsel rely principally upon section 5 of part 2 of the act (2 Comp. Laws 1915, § 5458). They concede that such an agreement as the statute contemplates may be set aside for fraud, mistake, or undue influence. In our opinion the statute contemplates an agreement and settlement made without contingency or condition, and not one based upon a possible or probable event that may render it inoperative. An agreement and settlement, based on the strength of such a condition or contingency, is not such as the statute contemplates. Here, according to the testimony of the adjuster, Pocklington, the settlement was based upon the understanding that if claimant's hand got worse so that he should lose the usefulness of the hand, the board would see that he got paid for it. The testimony of the claimant and his wife went much farther, and was to the effect that if the hand and fingers did not get better, he could put the matter before the board, and that the agreement would not be binding, or final. It does not meet the question to say that Mr. Pocklington did not intend to act fraudulently. The material question is, What was the effect of what he said? Ordinarily one cannot successfully ask for affirmative relief on the bare ground that he was either ignorant of the law, or mistaken as to what it prescribed. But it is now well settled that this rule is not invariably to be applied. In many cases where injustice would be done by its enforcement, this has been avoided by declaring that a mistake as to the existence of certain particular rights, though caused by an erroneous idea as to the legal effect of an instrument, or as to the duties or obligations created by an agreement, was really a mistake of fact, and not strictly one of law, and so did not constitute an insuperable bar to relief. *Reggio* v. *Warren* (207

Mass. 525, 93 N. E. 805, 32 L. R. A. [N. S.] 340), as
reported in 20 Am. & Eng. Ann. Cas. 1244, and cases
cited in note.   The rule is that a release' may be re-
scinded for a mutual mistake of law.   *Kirchner* v.
*Sewing Machine Co.,* 135 N. Y. 182, 189 (31 N. E.
1104)." Whether placed upon the ground of construct-
ive fraud, or mistake of fact as well as of law, the law
forbids that a party who, with full knowledge of the
ignorance of the other contracting party, has not only
encouraged that ignorance, but has knowingly deceived
and led that other into a mistaken conception of his
legal rights, should shield himself behind the doctrine
that a mere mistake of law affords no ground for
relief.| We think that, placing its action upon either
ground, the board did not err in acting, notwithstand-
ing the so-called settlement agreement. \'

2. The remaining assignments of error may be con-
sidered together.   It should`be stated that the order
of the board was made before the opinion of this court
in *Hirschkorn* v. *Desk Co.,* 184 Mich. 239 (150 N. W.
851), was rendered.   That case has been followed by
*Cline* v. *Studebaker Corporation,* 189 Mich. 514 (155
N. W. 519).   Those cases hold that as the act (section
10, pt. 2 [2 Comp. Laws 1915, § 5440]) under the
schedule of specific indemnity provides compensation
only for the loss of an eye, an award cannot be arrived
at upon a basis of a partial loss of the same.   We think
that this principle, and the reasoning of the cases, ap-
ply as well in the case of an injury to a hand as to an
eye.   Although there is no special finding upon the
point, it is evident from the language used by the
board that it made its allowance under the schedule of
fixed liabilities contained in the above-cited section,
instead of under the first clause of that section, which
is as follows:

"While the incapacity for work resulting from the
injury is partial, the employer shall pay, or cause to

be paid as hereinafter provided, to the injured employee a weekly compensation equal to one-half the difference between his average weekly wages before the injury, and the average weekly wages which he is able to earn thereafter, but not more than ten dollars a week; and in no case shall the period covered by such compensation be greater than three hundred weeks from the date of injury."

It was our first impression that the amount awarded was no greater than could have been given, by the evidence, under the clause above quoted, and that appellant had not been injured in the amount of the award. A more careful examination of the evidence leads us to doubt the correctness of that impression.

Under the practice as stated in *Andrejwski* v. *Coal Co.*, 182 Mich. 298 (148 N. W. 684), and *Finn* v. *Railway*, 190 Mich. 112 (155 N. W. 721), the order of the said Industrial Accident Board is therefore reversed, and the case hereby remanded for such further hearing therein before said board as the parties may desire.

KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.