BRIGGS TAX SERVICE, LLC v DETROIT PUBLIC SCHOOLS

Docket No. 278865. Submitted November 12, 2008, at Detroit. Decided December 23, 2008, at 9:10 a.m. Leave to appeal granted, 483 Mich
___.

Briggs Tax Service, L.L.C., petitioned the Tax Tribunal for a refund of taxes that it alleged the Detroit Public Schools had levied and collected without authorization and to enjoin future tax collections without proper authorization. Briggs also named the Detroit Board of Education, the city of Detroit, and the Wayne County Treasurer as respondents. At issue were school-operating property taxes that the Detroit Public Schools levied on nonhomestead-property owners in a three-year period even though the electors had not authorized the taxes for those years, as required by MCL 380.1211. The tribunal initially dismissed the claim on jurisdictional grounds because Briggs had not filed it within 30 days after the applicable tax bills were issued, but subsequently allowed Briggs to file an amended petition. The amended petition included allegations of mutual mistake. The Detroit Public Schools and the county treasurer moved separately for summary disposition on various grounds, which the tribunal granted. Briggs appealed.

The Court of Appeals *held*:

The tribunal erred when it dismissed the petition. When Briggs filed its petition, MCL 205.735(2) generally required a party to file a petition with the tribunal within 30 days of a final decision. When another statute provides a different filing time limit, however, that statute controls and MCL 205.735 does not apply. MCL 211.53a permits a petition for a refund within three years from the date of the tax payment in the case of a mutual mistake of fact. As used in that statute, "mutual mistake of fact" means an erroneous belief about a material fact that affects the substance of the transaction that both parties share and rely on. This case arose from a mutual mistake of fact. Both parties believed that Briggs was required to pay the disputed taxes even though it had no such obligation. Whether the procedures necessary to renew the property tax assessments in order to levy the taxes were followed is a question of fact. Whether Briggs was required to pay the taxes is also a factual question. Therefore, Briggs was entitled to the

three-year limitations period. The tribunal had jurisdiction, and the 30-day statute of limitations did not bar this case. Summary disposition was inappropriate.

Reversed and remanded.

TAXATION — PROPERTY TAX — TAX TRIBUNAL — JURISDICTION — LIMITATION OF ACTIONS — MUTUAL MISTAKE OF FACT.

The three-year limitations period of MCL 211.53a, rather than the general limitations periods of MCL 205.735, applies when the assessment and payment of property taxes involves a mutual mistake of fact; as used in MCL 211.53a, "mutual mistake of fact" means an erroneous belief about a material fact that affects the substance of the transaction that both parties share and on which the parties rely.

*Giarmarco Mullins & Horton, PC* (by *Larry W. Bennett*), and *The Mazzara Law Firm, PLLC* (by *Jack J. Mazzara* and *Lanalee C. Farmer*), for Briggs Tax Service, L.L.C.

*Dickinson Wright PLLC* (by *Robert F. Rhoades* and *Adam D. Grant*), *Miller, Canfield, Paddock & Stone PLC* (by *Jerome R. Watson* and *Larry J. Saylor*), and *Thrun Law Firm, PC* (by *David Olmstead* and *Roy H. Henley*), for the Detroit Public Schools and the Detroit Board of Education.

*Joanne D. Stafford*, Assistant Corporation Counsel, for the city of Detroit

*Edward M. Thomas*, Corporation Counsel, and *Richard G. Stanley*, Assistant Corporation Counsel, for the Wayne County Treasurer.

Before: JANSEN, P.J., and O'CONNELL and OWENS, JJ.

O'CONNELL, J. Petitioner Briggs Tax Service, L.L.C. (Briggs), appeals as of right the decision by the Michigan Tax Tribunal (Tribunal) granting respondents' motions for summary disposition under MCR

2.116(C)(4) and (7) and dismissing its petition for a refund of school-operating property taxes for the years 2002, 2003, and 2004 under MCR 2.116(C)(4).[1] We reverse and remand.

The applicable provision of the Revised School Code, MCL 380.1 *et seq.*, requires that school electors approve any increases in property taxes and limits the millage that may be levied at 18 mills. See MCL 380.1211.[2] The parties do not dispute that respondent Detroit Public Schools (DPS) levied school-operating property taxes on nonhomestead-property owners for tax years 2002, 2003, and 2004, although DPS electors did not authorize these taxes.[3]

In its initial petition filed with the Tribunal, Briggs sought to have the unauthorized taxes that were levied and collected by DPS refunded and to enjoin future collections without proper authority. In addition to DPS, petitioner named as respondents the Detroit Board of Education, the city of Detroit (City), and the Wayne County Treasurer. Petitioner also sought an award for the damage allegedly caused by the unlawful property tax levy and alleged that

---

[1] Briggs is not appealing the Tribunal's holding that its claim pertaining to tax year 2005 is moot. Although the parties debate whether summary disposition pursuant to MCR 2.116(C)(8) and (10) would be appropriate, the Tribunal never granted summary disposition on those grounds in its final opinion and judgment. Therefore, we will not address the appropriateness of summary disposition on those grounds.

[2] The Revised School Code was amended to require elector approval of property tax increases after Michigan voters adopted Proposal A in 1994, which amended article 9, § 3, of the Michigan Constitution. For a discussion of the historical reforms to school financing, see *Durant v Michigan (On Remand)*, 238 Mich App 185; 605 NW2d 66 (1999).

[3] Voters had authorized the school-operating millage in 1993, but this millage expired on June 30, 2002. After the November 2005 election, the school-operating millage was reinstated.

[i]n assessing, levying, collecting and/or receiving the 18 mil [sic] property tax after authorization for the tax expired on June 30, 2002, defendants have violated Michigan Const. Art Ix [sic], § 6, and have taken the property of plaintiffs and other property owners in the City of Detroit without due process of law.[4]

The Tribunal dismissed Briggs's claim for a refund on jurisdictional grounds because the case was not filed within 30 days of the issuance of the applicable tax bills. However, on reconsideration, the Tribunal gave Briggs the opportunity to file an amended petition.

In its amended petition, Briggs alleged that the "assessment and collection of the Illegal Levy constituted a fraud or constructive fraud on Petitioner" and tolled any period of limitations. In the seven-count petition, Briggs sought tax refunds on the grounds that respondents violated MCL 380.1211 by levying, collecting, or receiving the illegal levy (count I), that a mutual mistake of fact occurred under MCL 211.53a (count III), and that city ordinances precluded illegal and unjust taxes (count VI). Briggs sought damages for alleged misrepresentations (count II), violations of the Michigan Constitution (count V), and conversion under both the common law and an ordinance (count VII). Briggs also sought the creation of a constructive trust for the amount of the illegal tax levy under a constructive fraud theory (count IV).

---

[4] On August 8, 2005, petitioner and other property owners also filed an action in the Wayne Circuit Court seeking class certification and refunds of the school-operating property tax. That case was disposed of by summary disposition in May and June 2006 on the ground that the Tribunal had exclusive jurisdiction over the claims. Claims based on the Headlee Amendment were dismissed on other grounds. This Court affirmed that decision in March 2007. See *Briggs Tax Service, LLC v Detroit Pub Schools*, unpublished opinion per curiam of the Court of Appeals, issued March 13, 2007 (Docket No. 271631).

DPS moved for summary disposition under MCR 2.116(C)(4), (7), (8), and (10). The Wayne County Treasurer moved for summary disposition under MCR 2.116(C)(4) on the basis of the Tribunal's lack of jurisdiction and under MCR 2.116(C)(8) and (10) on the basis of Wayne County's lack of involvement in levying taxes.[5] After a hearing, and in response to respondents' motions, the Tribunal granted summary disposition under MCR 2.116(C)(4) and (7) and dismissed Briggs's petition under MCR 2.116(C)(4).

On appeal, Briggs claims that it was entitled to pursue a refund pursuant to MCL 211.53a and that the Tribunal erred when it dismissed its petition. We agree. Generally, our review of a Tribunal decision is limited. *Mount Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). Our review of the Tribunal's decision includes "the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. The Tribunal's factual findings are final if they are supported by competent and substantial evidence. *Mount Pleasant, supra* at 53. We review de novo both questions of statutory construction and the Tribunal's grant or denial of a motion for summary disposition. *Moshier v Whitewater Twp*, 277 Mich App 403, 407; 745 NW2d 523 (2007).

Because the Tribunal's rules of practice and procedure do not contain an applicable rule concerning summary disposition, the Tribunal appropriately applied MCR 2.116 to address summary disposition claims. See Mich Admin Code, R 205.1111(4) ("If an

---

[5] The City filed an answer to the amended petition and affirmative defenses, but it did not file a motion for summary disposition.

applicable entire tribunal rule does not exist, the 1995 Michigan Rules of Court, as amended, . . . shall govern."); *Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 705-706, 714 NW2d 392 (2006). We will also review the Tribunal's decision regarding summary disposition under the correct subrules of MCR 2.116. See *Farm Bureau Ins Co v Abalos*, 277 Mich App 41, 43; 742 NW2d 624 (2007).

A motion for summary disposition may be granted under MCR 2.116(C)(4) when a court lacks subject-matter jurisdiction. Summary disposition is appropriate under MCR 2.116(C)(7) if the "claim is barred because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." We review de novo the Tribunal's decision to grant a motion for summary disposition under MCR 2.116(C)(4) or (7). *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001); *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

At the time of this petition, MCL 205.735(2) set forth requirements for invoking the Tribunal's jurisdiction. As a general rule, the statute required filing a petition with the Tribunal within 30 days of a final decision.[6] However, this Court has also held that when another statute provides a different time limit for filing a petition with the Tribunal, that statute controls and MCL 205.735 does not apply. *Wikman v City of Novi*, 413 Mich 617, 652-653; 322 NW2d 103 (1982). One such statute is MCL 211.53a, which provides:

---

[6] Effective May 30, 2006, the time limits were moved to MCL 205.735(3) and the general time limit changed to 35 days. See 2006 PA 174.

Any taxpayer who is assessed and pays taxes in excess of the correct and lawful amount due because of a clerical error or mutual mistake of fact made by the assessing officer and the taxpayer may recover the excess so paid, without interest, if suit is commenced within 3 years from the date of payment, notwithstanding that the payment was not made under protest.

Therefore, if Briggs's excess tax payments arose because of a mutual mistake of fact by both Briggs's agent and the assessing officer regarding the nature and amount of taxes that Briggs owed, the three-year filing provision of MCL 211.53a would apply, and Briggs would have had three years, not 30 days, to file its petition for a tax refund.[7]

In *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 439-440; 716 NW2d 247 (2006), our Supreme Court considered the common-law meaning of the phrase "mutual mistake of fact," its usage in contract law, and the definition in Black's Law Dictionary to determine the legislative intent behind MCL 211.53a. The Court

---

[7] We disagree with the Tribunal's conclusion that MCL 211.53a does not apply because the statute only concerns a mutual mistake of fact by the petitioner and the assessing officer and the assessing officer is not a party to this appeal. For purposes of this appeal, the parties do not dispute that a mistake was made, i.e., Briggs paid school-operating property taxes that were not properly authorized. Respondents in this case are all governmental entities, and a governmental entity can only act through its agents. *Ross v Consumers Power Co* (*On Rehearing*), 420 Mich 567, 621 n 35; 363 NW2d 641 (1984). Further, the "general rule is that knowledge of an agent on a material matter, acquired within the scope of the agency, is imputed to the principal." *Turner v Mut Benefit Health & Accident Ass'n*, 316 Mich 6, 21; 24 NW2d 534 (1946). The assessing board made a mistake in this case: it applied the taxes on the assumption that the school-operating property taxes were valid, although these taxes had not been properly authorized and, therefore, should not have been assessed for this purpose. The board's mistake, in turn, can be imputed to respondents because respondents relied on the board's assessments for tax-collection and budgeting purposes. Hence, a mutual mistake occurred in this case.

determined that this phrase had acquired a peculiar and appropriate meaning in the law that had not changed since *Sherwood v Walker*, 66 Mich 568; 33 NW 919 (1887).[8] *Id.* at 440-442. Our Supreme Court concluded that the phrase "mutual mistake of fact" in MCL 211.53a means "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Sherwood*, *supra* at 442.

The dispute in *Ford Motor Co* arose after the petitioner filed statutorily required personal property tax statements containing factual errors with the appropriate taxing jurisdictions. The assessors accepted and relied on the incorrect statements when calculating the petitioner's tax liability. *Ford Motor Co, supra* at 428. After discovering the inaccuracies, the petitioner filed petitions with the Tribunal against the taxing jurisdictions for refunds under MCL 211.53a. *Ford Motor Co, supra* at 428-429. In holding that the petitioner's refund claim was valid, our Supreme Court noted that ultimate statutory responsibility for determining the proper assessments rested with the assessor:

> In sum, the [General Property Tax Act (GPTA)] requires the assessor to ascertain what personal property is in his jurisdiction and assess it accordingly. In doing so, the assessor must exercise his best judgment and has many tools available to better fulfill his statutory responsibility. And while the personal property statements greatly assist the assessor in carrying out that responsibility, the assessor is not bound by the taxpayer's personal property statement. So when an assessor simply relies on a taxpayer's personal property statement and subsequently calculates

---

[8] In *Sherwood*, our Supreme Court determined that the sellers had the right to rescind a contract for the sale of a cow if the parties understood that the cow was barren at the time of contracting but it was later determined that the cow was not barren and, therefore, worth more than the agreed-upon price. See *Ford Motor Co, supra* at 440-442.

the assessment on the basis of this information alone—like in these cases—the assessor is effectively adopting the personal property statement as his own belief of what the taxpayer owns. In other words, under these circumstances, there is a mutual understanding of what property the taxpayer owns, and this mutual understanding goes to the very nature of the transaction—an accurate tax assessment. Therefore, the GPTA and the assessment process itself lead us to the inescapable conclusion that mutual mistakes of fact occurred in these cases. [*Id.* at 446-447 (citations omitted).]

More recently, in *Eltel Assoc, LLC v City of Pontiac,* 278 Mich App 588; 752 NW2d 492 (2008), this Court upheld the Tribunal's determination that MCL 211.53a applied when an assessor mistook the date on deeds as the date when ownership of exempt property was transferred to the petitioner for the purpose of determining that the property did not qualify for a tax exemption for a given tax year. This Court determined that the petitioner was also misdirected by the mistake and "plenarily adopted it as its own when it paid the taxes . . . ." *Eltel Assoc, LLC, supra* at 592. This Court explained:

The nature of this factual issue is not transformed by petitioner's initial understanding of its ownership anymore than it would be by a misperception about the nature of the state's exemption after the December closing. See *Carpenter v Detroit Forging Co,* 191 Mich 45, 53; 157 NW 374 (1916). The factual mistake concerned the identity of the parcels' owner on December 31, 2001, not any legal nitpicking that arose afterward. *Id.* Simply put, the date on which title transferred to petitioner was purely a factual issue until respondent clouded it with a technical legal challenge to the particulars of this transfer. If an assessor *mistakenly places an exempt property on the rolls* because the deed's scrivener absent-mindedly misdated it as delivered the previous year and a taxpayer remits payment because it carelessly mistakes the same date as accurate, then the issue would be a factual one: When did the

taxpayer actually obtain the property? This factual issue could not be retroactively transformed by claiming that laws involving written instruments, statutes against the back-dating of documents, or a latent violation of the rules against perpetuities, all raise legal questions that, had the assessor or landowner ever considered them, would have affected their legal confidence in the factual issue of ownership.

Likewise, it does not serve any legitimate purpose to probe every passing thought of a billed taxpayer to explore whether any point of misplaced confidence in a bill's factual accuracy carries with it some underlying notion of legal rights and obligations. *Id.*; see also *Ford Motor Co, supra.* Petitioner demonstrated that the parties mistakenly believed that petitioner owned the properties in 2001, making them subject to taxation in 2002. Petitioner did not own the properties in 2001, and they were exempt from taxation in 2002. Although respondent's legal challenge demonstrates its continued refusal to acknowledge its mistake, its obstinacy does not make the mistake one of law. [*Eltel Assoc, LLC, supra* at 592-593.]

We have determined that the *Eltel* Court's well-reasoned opinion is applicable to this case. This litigation arises not from a dispute over a question of law, but from a mutual mistake of fact—both parties erroneously believed that Briggs was required to pay the disputed taxes in 2002, 2003, and 2004, although Briggs had no such obligation. See *Ford Motor Co, supra* at 442. Although the statutory provisions of the Revised School Code identify the circumstances under which the property taxes in question could be levied, the question whether the procedures necessary to renew the property tax assessments in order to levy taxes on nonhomestead-property owners for tax years 2002, 2003, and 2004 were followed is one of fact—either the school electors authorized the taxes for those years or they didn't. Similarly, whether Briggs, a nonhomestead-property owner, was required to pay these taxes (and,

hence, whether Briggs is entitled to a refund of these taxes) is a factual question. Therefore, the belief apparently held by both Briggs and respondents—that respondents were authorized to issue, and Briggs was obligated to pay, the disputed taxes in 2002, 2003, and 2004—constitutes a mutual mistake of fact.

Because the alleged overpayment of taxes arose when the parties made a mutual mistake of fact, MCL 211.53a controls. Therefore, Briggs could bring a suit to recover excess tax payments if the disputed payments for the 2002, 2003, and 2004 tax years were made within three years of filing suit. Because the Tribunal has jurisdiction over this case, summary disposition under MCR 2.116(C)(4) is inappropriate. Similarly, summary disposition should not have been granted under MCR 2.116(C)(7) because this case is not barred by a 30-day statute of limitations.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.