**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Marilyn Kelly           Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman
                        Diane M. Hathaway

FILED March 30, 2010

S T A T E   O F   M I C H I G A N

SUPREME COURT

BRIGGS TAX SERVICE, L.L.C.,

Petitioner-Appellee,

v                                                       No. 138168

DETROIT PUBLIC SCHOOLS and
DETROIT BOARD OF EDUCATION,

Respondents-Appellants,

and

CITY OF DETROIT and WAYNE
COUNTY TREASURER,

Respondents.

BRIGGS TAX SERVICE, L.L.C.,

Petitioner-Appellee,

v                                                       No.  138179

DETROIT PUBLIC SCHOOLS, DETROIT
BOARD OF EDUCATION, and WAYNE
COUNTY TREASURER,

Respondents,

and

CITY OF DETROIT,

Respondent-Appellant.

---

BRIGGS TAX SERVICE, L.L.C.,

Petitioner-Appellee,

v                                                    No. 138182

DETROIT PUBLIC SCHOOLS, DETROIT
BOARD OF EDUCATION, and CITY OF
DETROIT,

Respondents,

and

WAYNE COUNTY TREASURER,

Respondent-Appellant.

---

BEFORE THE ENTIRE BENCH

KELLY, C.J.

The dispute in this case concerns whether respondent's wrongful collection of property taxes from petitioner constitutes a mutual mistake of fact within the meaning of MCL 211.53a. If the assessing officer and petitioner made a mutual mistake of fact, the three-year limitations period of MCL 211.53a applies, and petitioner may pursue its refund claim. If not, petitioner is not entitled to a refund because it did not file its petition within the general limitations period. We

2

conclude that the assessing officer and petitioner did not make a mutual mistake of fact and that MCL 211.53a does not apply to petitioner's claim. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the decision of the Tax Tribunal.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September 1993, voters in the Detroit Public School district approved a 32.25-mill school operating property tax. The millage authorized respondent Detroit Public Schools (DPS) to levy property taxes until the millage expired on June 30, 2002. In March 1994, Michigan voters approved Proposal A, a school finance reform proposal. Under Proposal A, local school districts are precluded from levying more than 18 mills in property taxes. However, Proposal A provided that unexpired millages authorized before January 1, 1994, are valid, even if greater than 18 mills.

Despite the fact that voter approval for the DPS operating millage expired on June 30, 2002, DPS continued to levy an unauthorized 18-mill tax for tax years 2002, 2003, and 2004. Dr. Kenneth Burnley, the Chief Executive Officer of the Detroit Public School District, approved annual resolutions certifying the tax levies. DPS apparently believed that, when voters approved Proposal A, local school district electors no longer needed to approve a tax rate of 18 mills. In August 2005, DPS published a notice acknowledging that the taxes levied for 2002, 2003, and 2004 were levied without authorization and that the revenue from those taxes might have to be refunded.

Petitioner, Briggs Tax Service, L.L.C., filed a claim with the Tax Tribunal against respondents DPS, the Detroit Board of Education, the city of Detroit, and the Wayne County Treasurer. It sought a refund of the unauthorized taxes levied and collected by DPS.[1] Petitioner also sought to enjoin future collections without proper authority as well as an award for the damage that the unlawful property tax levies allegedly caused. Additionally, petitioner asserted that respondents violated the Michigan Constitution by unlawfully taking its property and by depriving it and other property owners of due process of law.[2]

The Tax Tribunal dismissed petitioner's refund claim on jurisdictional grounds because it had not been filed within 30 days of the issuance of the

---

[1] Pursuant to the Tax Tribunal Act, MCL 205.701 *et seq.*, the Tax Tribunal has exclusive and original jurisdiction over this case. Specifically, MCL 205.731 provided at the relevant time:

> The tribunal's exclusive and original jurisdiction shall be:
>
> (a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.
>
> (b) A proceeding for refund or redetermination of a tax under the property tax laws.

[2] In addition to the action filed with the Tax Tribunal, petitioner and other property owners filed an action in the Wayne Circuit Court seeking class certification and refunds of the property tax that DPS imposed. The circuit court granted summary disposition to respondents on the ground that the Tax Tribunal had exclusive jurisdiction over the claims. The Court of Appeals affirmed that decision. *Briggs Tax Service, LLC v Detroit Pub Schools*, unpublished opinion per curiam of the Court of Appeals, issued March 13, 2007 (Docket No. 271631).

4

applicable tax bills as required by MCL 205.735(2).[3]  On reconsideration, the Tax Tribunal gave petitioner the opportunity to file an amended petition.

In its amended petition, petitioner alleged that a mutual mistake of fact under MCL 211.53a had occurred.  Applying MCL 211.53a, petitioner claimed that it had three years in which to file suit to recover the unauthorized taxes.  DPS and the county treasurer moved for summary disposition, alleging that the Tax Tribunal lacked jurisdiction because the three-year period provided by MCL 211.53a did not apply.  The Tax Tribunal agreed, ruling that

> MCL 211.53a governs a ". . . mutual mistake of fact made by the **assessing officer** and the taxpayer . . . ."  (Emphasis added.)  Pursuant to MCL 211.10d(1), the assessing officer is an assessor who has been certified by the state assessor's board and who makes an annual assessment of property.  An assessor is not tasked with determining, approving, certifying, or verifying a millage, nor is that person qualified to do so.  Moreover, an assessor is not involved in the collection of the tax.  Assessors are employed by assessing jurisdictions.  While assessing jurisdictions also levy property taxes, not all jurisdictions that levy property taxes are assessing jurisdictions.  In the instant case, the assessor was employed by the City of Detroit, not DPS.  For these reasons, the Tribunal finds that the assessing officer made **no** mistake as to the expiration date of DPS' millage.[4]

Accordingly, the Tax Tribunal dismissed petitioner's refund claim because it was not filed within 30 days as required by MCL 205.735(2).

---

[3] Effective May 30, 2006, the time limits in MCL 205.735(2) were moved to MCL 205.735(3) and the general limitations period changed from 30 to 35 days. See 2006 PA 174.

[4] *Briggs Tax Service, LLC v Detroit Pub Schools*, 16 MTTR 145, 165 (Docket No. 319592, May 31, 2007).

The Court of Appeals reversed the judgment of the Tax Tribunal, holding that petitioner was entitled to pursue a claim for a refund under MCL 211.53a.[5] It reasoned that the mistake regarding the validity of imposing the tax was a mutual mistake of fact between the taxpayer and the assessor, rejecting the Tax Tribunal's conclusion to the contrary:

> This litigation arises not from a dispute over a question of law, but from a mutual mistake of fact—both parties erroneously believed that [petitioner] was required to pay the disputed taxes in 2002, 2003, and 2004, although [petitioner] had no such obligation. . . . [T]he question whether the procedures necessary to renew the property tax assessments in order to levy taxes on nonhomestead-property owners for tax years 2002, 2003, and 2004 were followed is one of fact—either the school electors authorized the taxes for those years or they didn't. Similarly, whether [petitioner], a nonhomestead-property owner, was required to pay these taxes (and, hence, whether [petitioner] is entitled to a refund of these taxes) is a factual question. Therefore, the belief apparently held by both [petitioner] and respondents—that respondents were authorized to issue, and [petitioner] was obligated to pay, the disputed taxes in 2002, 2003, and 2004—constitutes a mutual mistake of fact.[6]

We granted respondents' applications for leave to appeal to determine whether a mutual mistake of fact occurred such that the three-year limitations period of MCL 211.53a applies.[7]

---

[5] *Briggs Tax Service, LLC v Detroit Pub Schools*, 282 Mich App 29; 761 NW2d 816 (2008).

[6] *Id*. at 38-39.

[7] *Briggs Tax Service, LLC v Detroit Pub Schools*, 484 Mich 1024 (2009).

6

STANDARD OF REVIEW

The standard of review of Tax Tribunal cases is multifaceted.[8] If fraud is not claimed, this Court reviews the Tax Tribunal's decision for misapplication of the law or adoption of a wrong principle.[9] We deem the Tax Tribunal's factual findings conclusive if they are supported by "competent, material, and substantial evidence on the whole record."[10] But when statutory interpretation is involved, this Court reviews the Tax Tribunal's decision de novo.[11] We also review de novo the grant or denial of a motion for summary disposition.[12]

ANALYSIS

This case involves an issue of statutory interpretation. The primary goal of statutory interpretation is to give effect to the intent of the Legislature.[13] The first

[8] *Wexford Med Group v City of Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006).

[9] *Michigan Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994).

[10] *Id.*, citing Const 1963, art 6, § 28, and *Continental Cablevision of Michigan, Inc v City of Roseville*, 430 Mich 727, 735; 425 NW2d 53 (1988).

[11] *Lincoln v Gen Motors Corp*, 461 Mich 483, 489-490; 607 NW2d 73 (2000).

[12] *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

[13] *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999).

7

step is to review the language of the statute.[14]  If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute.[15]

Legal Background

When this case arose, MCL 205.735(2) set forth the requirements for invoking the Tax Tribunal's jurisdiction.  Generally, former MCL 205.735(2) required filing a petition with the Tax Tribunal within 30 days of a final decision.  However, when another statute provides a different limitations period for filing a petition with the Tax Tribunal, that statute controls and MCL 205.735 does not apply.[16]  Germane to this appeal is MCL 211.53a, which provides:

> Any taxpayer who is assessed and pays taxes in excess of the correct and lawful amount due because of a *clerical error* or *mutual mistake of fact made by the assessing officer and the taxpayer* may recover the excess so paid, without interest, if suit is commenced within 3 years from the date of payment, notwithstanding that the payment was not made under protest.  [Emphasis added.]

Thus, the Legislature has provided taxpayers with two situations in which a three-year limitations period applies: (1) cases in which there is a "clerical error" and (2) cases in which the assessing officer and the taxpayer made a mutual mistake of fact.  In this case, no party contends that there was a clerical error.  We thus focus our discussion on the meaning and application of the phrase "mutual mistake of

---

[14] *Id*.

[15] *Id*.

[16] *Wikman v City of Novi*, 413 Mich 617, 652-653; 322 NW2d 103 (1982).

fact made by the assessing officer and the taxpayer." Instructive in this regard is MCL 8.3a, which provides:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

Here, the phrase "mutual mistake of fact" is a technical term that has acquired a particular meaning under the law.

In *Ford Motor Co v City of Woodhaven*,[17] we considered the common-law meaning of "mutual mistake of fact." We referred to the Black's Law Dictionary definitions of "mistake," "mutual mistake," and "mistake of fact," as well as the seminal case of *Sherwood v Walker*.[18] We held that a "mutual mistake of fact" is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction."[19]

Application

There is no doubt that a mistake occurred in this case: DPS levied a tax without the requisite voter approval. It erroneously believed that it could levy an 18-mill tax for tax years 2002, 2003, and 2004 when, in fact, authorization for the previously approved tax had expired. This resulted in wrongful assessments that

---

[17] *Ford Motor Co v City of Woodhaven*, 475 Mich 425; 716 NW2d 247 (2006).

[18] *Sherwood v Walker*, 66 Mich 568; 33 NW 919 (1887).

[19] *Ford*, 475 Mich at 442.

9

petitioner and other taxpayers paid in full. However, we conclude that this mistake does not constitute a "mutual mistake of fact" within the meaning of MCL 211.53a.

*No "Mutual" Mistake*

In order for the three-year limitations period of MCL 211.53a to apply, the "mistake of fact" must be "mutual." That is, it must be shared and relied on by the assessing officer and the taxpayer. No such mutuality exists here. The mistake in this case is attributable to DPS alone, whose CEO certified the tax levied against petitioner pursuant to DPS's statutory duties.[20] In its amended petition before the Tax Tribunal, petitioner acknowledged that DPS, not the assessor, certified the tax.[21]

---

[20] DPS certified the tax it levied pursuant to the Revised School Code. See MCL 380.432(2), which provides:

> The [first class school district] board shall adopt a budget in the same manner and form as required for its estimates and determine the amount of tax levy necessary for that budget and *shall certify* on or before the date required by law the amount to the city. [Emphasis added.]

[21] Petitioner's amended petition stated:

> 48. Upon information and belief, the City [of Detroit] issued tax bills imposing the Illegal Levy based on the *certifications or resolutions by the Board* [*of Education of the city of Detroit*] *and/or DPS*.

> 49. The certifications, resolutions and/or tax bills were relied upon by Petitioner and Respondents under the mistaken belief that the Illegal Levy was authorized. [Emphasis added.]

Nor did the assessor make a mistake in performing his duties in spreading and assessing the tax. In fact, the assessor performed his statutory duties as required, and petitioner has made no allegation to the contrary.[22] Thus, there was no mutual mistake between the assessor and taxpayer, as required for application of MCL 211.53a.

This analysis is supported by the General Property Tax Act (GPTA).[23] The GPTA provides that tax assessors have numerous duties, including the (1) creation of an annual tax assessment roll, (2) determination of property values for tax assessment purposes, (3) determination of taxable values, and (4) placement on the assessment roll of assessed and taxable values.[24] Furthermore, the Revised School Code provides that school boards "shall adopt a budget . . . and determine the amount of tax levy necessary for that budget . . . ."[25]

Once that determination is made, assessors are required to "spread the taxes on the tax roll on the taxable value for each item of property."[26] After the

---

[22] The assessor is not a party to this lawsuit.

[23] MCL 211.1 *et seq.*

[24] See MCL 211.10; MCL 211.27a.

[25] MCL 380.432(2).

[26] MCL 211.24b(2); see also Detroit Charter, § 8-402(2), which provides:

> The assessors shall prepare the tax roll by spreading property taxes ratably on the assessment roll on or before the date provided by ordinance and shall deliver the tax roll to the treasurer in the manner provided by law.

assessment roll is complete and approved by a taxing unit's board of review, assessors receive certified tax rates from taxing units and multiply those rates by the taxable values.[27]  Assessors then deliver a final tax roll to the taxing unit's treasurer for collection.[28]

There is no authority supporting petitioner's argument that assessors are empowered to review or alter certified tax rates.  Indeed, an assessor who refuses to spread a certified tax is subject to a mandamus action.[29]  Thus, because DPS, rather than the assessor, erroneously certified the tax rate levied on petitioner, there was no mutual mistake between DPS and the assessor within the meaning of MCL 211.53a.

We also disagree with the Court of Appeals conclusion that DPS's mistake can be imputed to the assessor on an agency theory.[30]  The Court of Appeals concluded that "[r]espondents . . . are all governmental entities, and a governmental entity can only act through its agents.  Further, the 'general rule is that knowledge of an agent on a material matter, acquired within the scope of the

---

[27] See MCL 211.24(b), MCL 211.29, and MCL 211.42.

[28] MCL 211.42.

[29] *Board of State Tax Comm'rs v Quinn*, 125 Mich 128, 131; 84 NW 1 (1900) ("[I]t is not the duty of an [assessing] officer to omit a statutory duty because of an opinion that the action of his superiors has not conformed to law. He has merely to do his duty as prescribed by law, leaving the regularity of the action of others to be determined by the courts"), citing *Union School-Rogers Twp Dist v Parris*, 97 Mich 593; 56 NW 924 (1893).

[30] *Briggs*, 282 Mich App at 35 n 7 (citations omitted).

12

agency, is imputed to the principal.'"[31]  Yet the Court of Appeals summarily declared without supporting analysis that an agency relationship existed between the assessor and DPS.

In fact, assessors are not agents of taxing authorities. Fundamental to the existence of an agency relationship is the right of the principal to control the conduct of the agent.[32]  Here, DPS is not a principal with respect to the assessor and therefore has no authority to exert control over the assessor.  Nor is the assessor an employee of DPS.  Instead, assessors are employed by tax-assessing jurisdictions.  Nor is there a contractual relationship between the assessor and DPS.  As noted earlier, the assessor's duties arise independently of DPS and exist by virtue of statute.[33]  Accordingly, there is no basis for the Court of Appeals holding that DPS's mistake can be imputed to the assessor because an agency relationship exists between those parties.

*No Mistake "of Fact"*

Also necessary for application of MCL 211.53a is a mistake "of fact."  Lest confusion exist in differentiating mistakes of fact and mistakes of law, Michigan

---

[31] *Id.*

[32] *St Clair Intermediate School Dist v IEA/MEA*, 458 Mich 540, 557-558; 581 NW2d 707 (1998), citing *Capitol City Lodge No 141, FOP v Meridian Twp*, 90 Mich App 533, 541; 282 NW2d 383 (1979).

[33] Further demonstrating DPS's lack of control over the assessor is the fact that taxing authorities, such as DPS, are empowered to appeal as of right from decisions made by an assessing officer.  See, e.g., *Wayne Co v State Tax Comm*, 261 Mich App 174, 246; 682 NW2d 100 (2004).

13

courts have held on several occasions that an unauthorized tax levy constitutes a mistake of law.

In *Upper Peninsula Generating Co v City of Marquette*,[34] the defendant taxing authority imposed a property tax exceeding the 15-mill constitutional limitation without obtaining the necessary voter approval. The plaintiff taxpayer appealed from an order dismissing its refund suit, arguing that the excess tax was illegal because the electorate had not approved it. The plaintiff further argued that a mutual mistake of fact had occurred such that the three-year limitations period of MCL 211.53a applied to its claim. The Court of Appeals disagreed, holding that "[t]he failure to obtain the voters' approval for the millage in excess of the constitutional limitation cannot be characterized as a mistake of fact, and therefore plaintiff is not entitled to relief under this statute."[35]

Similarly, in *Carpenter v City of Ann Arbor*,[36] before 1965, the city had imposed a special purpose tax pursuant to specific statutory authority. That enabling statute was repealed effective July 1, 1965. The city nonetheless continued to levy the tax for tax years 1966, 1967, and 1968. The plaintiff taxpayer brought a refund action, alleging that payment was made under a mutual

---

[34] *Upper Peninsula Generating Co v City of Marquette*, 18 Mich App 516; 171 NW2d 572 (1969).

[35] *Id.* at 517.

[36] *Carpenter v City of Ann Arbor*, 35 Mich App 608; 192 NW2d 523 (1971).

mistake of fact. Relying on *Upper Peninsula*, the Court of Appeals held that the case did not involve a mutual mistake of fact within the meaning of MCL 211.53a.[37]

And in *Hertzog v Detroit*,[38] the plaintiff taxpayer brought suit against the city of Detroit, its board of education, and others seeking a declaratory judgment that the taxes it paid were unlawfully imposed. The plaintiff also sought a refund. This Court held that the plaintiff was not entitled to a refund because it did not bring suit within the 30-day limitations period of former MCL 211.53.

In his concurring opinion, Justice SOURIS opined:

> The instant case should be distinguished from one in which recovery is sought for taxes paid under a mistake of fact. In the latter circumstance it is the law in Michigan that a taxpayer may recover even if the taxes were not paid under protest. *Spoon-Shacket Company, Inc.* v. *County of Oakland* (1959), 356 Mich 151 [97 NW2d 25], in which the Court overruled *Consumers Power Company* v. *Township of Muskegon* (1956), 346 Mich 243 [78 NW2d 223], and adopted the reasoning of Mr. Justice TALBOT SMITH'S dissenting opinion in that case. Unlike the mistakes of fact involved in *Spoon-Shacket* and *Consumers Power*, and in *Farr* v. [*Nordman*] (1956), 346 Mich 266 [78 NW2d 186], the instant case involves what Justice TALBOT SMITH in *Consumers Power* (p 262) by reference to the Restatement of Restitution, § 75, denominated payment of "'void taxes and assessments'". . . .

> Thus, while in Michigan recovery may be had for taxes paid under a mistake of fact, there is no authority for a like recovery of

---

[37] *Id*. at 612.

[38] *Hertzog v Detroit*, 378 Mich 1; 142 NW2d 672 (1966).

void taxes and assessments, see *National Bank of Detroit* v. *City of Detroit* (1935), 272 Mich 610, 614, 615 [262 NW 422] . . . .[39]

These cases stand for the proposition that a mistake about the validity of a tax constitutes a mistake of law. We agree with their reasoning and reaffirm that collection of an unauthorized tax constitutes a mistake of law, not a mistake of fact.

In holding that the mistake about the validity of the property tax in this case constituted a mistake of fact, the Court of Appeals relied on *Ford*. This reliance was misplaced. In *Ford*, the petitioner Ford Motor Company (Ford) sought recovery of taxes that it claimed were paid as a result of a mutual mistake of fact within the meaning of MCL 211.53a. Ford had filed personal property statements with the relevant taxing units, but each report contained misinformation about the amount of taxable property. The assessor in each taxing unit accepted and relied on those statements as accurate when calculating Ford's tax liability. Ford paid the tax bills as issued. After discovering its errors, Ford petitioned the Tax Tribunal for a refund under MCL 211.53a, alleging a mutual mistake of fact.

We held that Ford had stated valid claims of mutual mistake of fact under MCL 211.53a. Ford and the assessors shared and relied on an erroneous belief about a material fact that affected the substance of the transactions.[40] Specifically,

---

[39] *Id*. at 22-23.

[40] *Ford*, 475 Mich at 443.

16

Ford's property statements overstated the amount of its taxable property, including reporting the same property twice.[41] As this mistake concerned a numeric value, it was inherently a factual mistake.

The mutual mistake of fact in *Ford* was markedly different from DPS's unilateral mistake of law in this case. Critical to our decision in *Ford* was the fact that the assessor and Ford shared a mistaken belief that resulted in an erroneous assessment, i.e., the amount of Ford's property subject to tax. Ford and the assessor mistakenly believed that X amount of Ford's property was taxable, when in reality, Y amount was properly taxable. In contrast, the mistake in this case was the imposition of an unlawful tax. Therefore, *Ford* does not support petitioner's contention that a mistake of fact occurred here. Indeed, in reaching our decision in *Ford*, we did not consider or discuss the distinction between a mutual mistake of fact and a mistake of law.

The Court of Appeals also mistakenly relied on *Eltel Assoc, LLC v City of Pontiac*[42] for its conclusion that a mistake of fact occurred. *Eltel* involved a purely factual issue concerning the date on which title to property passed from a tax-exempt owner to a nonexempt owner. The assessor relied on the date of the deed and concluded that the property was subject to the tax for the year in question. In

---

[41] *Id.*

[42] *Eltel Assoc, LLC v City of Pontiac*, 278 Mich App 588; 752 NW2d 492 (2008).

17

reality, the deed had been placed in escrow pending completion of certain conditions precedent to sale, and the property was not transferred to the nonexempt owner until after tax day. Thus, the Court of Appeals held that there was a mutual mistake of fact regarding the date on which title passed.[43] However, *Eltel* did not involve the validity of the underlying tax, which is a legal issue. Therefore, it is of no consequence to the disposition of this case.

For these reasons, we conclude that no mistake "of fact" occurred in this case within the meaning of MCL 211.53a. Accordingly, petitioner is not entitled to the three-year limitations period provided by that provision.

## CONCLUSION

We hold that DPS's mistake of levying an unauthorized 18-mill property tax for tax years 2002, 2003, and 2004 does not constitute a "mutual mistake of fact made by the assessing officer and the taxpayer" within the meaning of MCL 211.53a. Accordingly, the Tax Tribunal correctly ruled that petitioner's claim is subject to the 30-day limitations period of former MCL 205.735(2) and that the three-year limitations period of MCL 211.53a does not apply. Therefore, we reverse the judgment of the Court of Appeals and reinstate the decision of the Tax Tribunal.

Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

---

[43] *Id.*