KELLY SERVICES, INC v DEPARTMENT OF TREASURY

KELLY PROPERTIES, INC v DEPARTMENT OF TREASURY

Docket Nos. 303736 and 303737. Submitted April 3, 2012, at Lansing. Decided April 19, 2012, at 9:05 a.m.

Kelly Services, Inc. and Kelly Properties, Inc., filed separate petitions in the Tax Tribunal, challenging the Department of Treasury's determination that petitioners owed single business taxes for tax years 1997 through 2000 because of their failure to include royalty income derived from the licensing of their trademarks, trade names, and know-how in their sales-factor and gross-receipts calculations. Petitioners developed the trademarks, trade names, and know-how to create a common corporate identity and common business procedures and received the royalty income from licensing agreements between Kelly Properties, Inc., and Kelly Services, Inc., and from licensing agreements between Kelly Services, Inc., and foreign affiliated companies. The hearing referee disagreed with the department's position and recommended that the department's intents to assess be cancelled. The department rejected the recommendation and affirmed the assessments. Petitioners appealed that decision in the tribunal, which consolidated the cases. Petitioners moved for summary disposition pursuant to MCR 2.116(C)(10), which the Tax Tribunal granted, concluding that royalty income did not qualify as sales or lease or rent receipts and was properly excluded from petitioners' sales-factor and gross-receipts calculations. The department appealed.

The Court of Appeals *held*:

1. For purposes of the Single Business Tax Act (SBTA), former MCL 208.1 *et seq.*, the term "sales factor" was defined in former MCL 208.51 as a fraction, the numerator of which was the total sales of the taxpayer in Michigan during the tax year and the denominator of which was the total sales of the taxpayer everywhere during the tax year. Under former MCL 208.7(1), as amended by 1982 PA 376, for the relevant tax years, "sales" was defined as the gross receipts arising (1) from a transaction or transactions in which gross receipts constituted consideration for the transfer of title to or possession of property that was (a) stock in trade, (b) other property of a kind that would properly be

included in the inventory of the taxpayer, or (c) property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business; (2) from the performance of services that constituted business activities other than those included in (1); or (3) from any combination of (1) or (2).

2. Royalties do not constitute sales receipts for purposes of former MCL 208.7(1) because they do not arise from a transaction in which the royalty income was consideration for the transfer of possession of property. A royalty is compensation paid to the owner of certain types of property, such as intangible property or natural resources, for the use of that property. Royalty income derives from the transfer of the right to use property, not from the transfer of possession of property. Petitioners' royalty income from licensing trademarks and trade names did not constitute sales receipts for purposes of former MCL 208.7(1) because no transfer of title occurred and the licenses were not granted in consideration for the transfer of possession of the enumerated properties, which remained with petitioners who still owned the intangible property.

3. Because the royalty income clearly derived from the licensing of trademarks and trade names, not from the performance of services, it did not constitute gross receipts under that prong of sales analysis of former MCL 208.7(1).

4. During the relevant tax years, the term gross receipts was defined in former MCL 208.7(3) as the sum of sales and rental or lease receipts. Under the SBTA, income generated from royalties and rents were mutually exclusive categories given their differing natures and treatment. Thus, the royalty income did not constitute a rental or lease receipt. Because the royalty income also did not constitute sales under the SBTA, the Tax Tribunal properly excluded the royalty income from petitioners' gross-receipts and sales-factor calculations.

Affirmed.

1. Taxation — Single Business Tax — Royalties.

Royalties do not constitute sales receipts for purposes of the definition of "sales" in MCL 208.7(1) of the former Single Business Tax Act because they do not arise from a transaction in which the royalty income was consideration for the transfer of possession of property; a royalty is compensation paid to the owner of certain types of property, such as intangible property or natural resources, for the use of that property; royalty income derives from the transfer of the right to use property, not from the transfer of possession of property.

2. TAXATION — SINGLE BUSINESS TAX — ROYALTIES — RENTAL OR LEASE RECEIPTS.

Income generated from royalties and rents were mutually exclusive categories for purpose of the former Single Business Tax Act (SBTA) given their differing natures and treatments; royalty income does not constitute rental or lease receipts for purposes of the definitions of "sales" and "gross receipts" in former MCL 208.7(1) and (3) of the SBTA.

*Honigman Miller Schwartz & Cohn LLP* (by *June Summers Haas* and *Brian T. Quinn*), for Kelly Services, Inc., and Kelly Properties, Inc.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Kevin T. Smith*, Assistant Attorney General, for the Department of Treasury.

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM. Respondent, the Department of Treasury, appeals as of right an order of the Tax Tribunal that granted summary disposition in favor of petitioners, Kelly Services, Inc., and Kelly Properties, Inc., and denied respondent summary disposition. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioners are an affiliated group of companies. Kelly Services is a Delaware corporation in the business of providing temporary staffing services. Kelly Properties is a Michigan corporation managing the assets used in the business operations of Kelly Services and affiliated companies. Petitioners have developed trademarks, trade names, and the know-how to create a common corporate identity and common business procedures. These are shared by licensure between Kelly Properties and Kelly Services and by licensure between

Kelly Services and foreign affiliated companies. Petitioners receive royalty income from the licensing of these trademarks, trade names, and know-how.

For the tax years 1997 through 2000, petitioners were subject to the Single Business Tax Act (SBTA), former MCL 208.1 *et seq.*[1] To calculate their tax liability under the SBTA, petitioners were required to calculate their "sales factor" and "gross receipts." "Sales factor" was defined, in relevant part, as "a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer everywhere during the tax year." MCL 208.51.[2] MCL 208.7(1),[3] as amended by 1982 PA 376, defined "sales" as follows:

> "Sale" or "sales" means the gross receipts arising from a transaction or transactions in which gross receipts constitute consideration: (a) for the transfer of title to, or possession of, property that is stock in trade or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the tax period or property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business, or (b) for the performance of services, which constitute business activities other than those included in (a), or from any combination of (a) or (b).

MCL 208.7(3), defined "gross receipts," in relevant part, as the "sum of sales" and "rental or lease receipts." For the tax years at issue, petitioners excluded

---

[1] Repealed by 2006 PA 325, effective for tax years beginning after December 31, 2007. Throughout this opinion, we will refer to the provisions of the SBTA in effect at the relevant times by MCL number without designating them as former provisions.

[2] MCL 208.51 was amended by 1999 PA 115, and the quoted language became MCL 208.51(1).

[3] All references to MCL 208.7 are to that provision as amended by 1982 PA 376.

the royalty income generated from the licensing of trademarks, trade names, and know-how from their total sales and gross-receipts calculations.

Respondent audited petitioners and issued Kelly Services a bill of taxes due in the amount of $290,675, plus interest in the amount of $68,681.05, alleging that the royalty income should have been included in their sales-factor and gross-receipts calculations. Respondent also issued Kelly Properties a bill of taxes due in the amount of $49,727, plus interest in the amount of $21,966.80, alleging that the royalty income should also have been included in their calculation of gross receipts.

After the conclusion of the informal conference in respondent's hearings division, the hearing referee concluded that respondent's position with regard to petitioners' royalty income was incorrect and that the intents to assess issued by respondent should be cancelled. Respondent rejected the hearing referee's recommendation and affirmed the original assessments. Petitioners appealed in the Tax Tribunal, and their actions were consolidated.

In the Tax Tribunal, petitioners moved for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact), and respondent filed a motion pursuant to MCR 2.116(I)(2) (judgment for opposing party). The Tax Tribunal granted summary disposition to petitioners, concluding that royalty income does not qualify as sales or lease or rent receipts and therefore should not be included in the calculation of a taxpayer's sales factor or gross receipts.

Respondent moved for reconsideration, citing a conflicting tribunal opinion decided after posthearing briefs had been filed in the instant case. The Tax Tribunal denied the motion, and respondent now appeals as of right.

## II. STANDARD OF REVIEW

Absent an allegation of fraud, this Court reviews a Tax Tribunal decision for misapplication of the law or adoption of a wrong legal principle. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). "But when statutory interpretation is involved, this Court reviews the Tax Tribunal's decision de novo." *Id.* While agency interpretations of statutes are entitled to respectful consideration and should not be overruled without cogent reasons, they are not binding on this Court and cannot conflict with the Legislature's intent as expressed in the language of the statute. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103, 108-109; 754 NW2d 259 (2008). The overriding goal of statutory interpretation is the determination of legislative intent and the implementation of that intent once discerned. *AFSCME Council 25 v State Employees' Retirement Sys*, 294 Mich App 1, 8; 818 NW2d 337 (2011). When tax statutes are construed, any ambiguities are resolved in favor of the taxpayer. *Int'l Business Machines v Dep't of Treasury*, 220 Mich App 83; 86; 558 NW2d 456 (1996).

## III. ANALYSIS

Respondent argues that the Tax Tribunal erred as a matter of law when it concluded that royalty income from the licensing of trademarks and trade names were not included in sales and gross receipts under the SBTA before 2001. We disagree.

In *PM One Ltd v Dep't of Treasury*, 240 Mich App 255, 261-262; 611 NW2d 318 (2000), this Court held that the proper way to analyze what constitutes a "sale" is as follows:

(1) "gross receipts"

(2) arising from a "transaction" in which gross receipts constitute "consideration" for one of the following described in (a), (b), or (c):

(a) *transfer of title to, or possession of, property that is*

(i) stock in trade; or

(ii) other property of a kind that would be properly included in the inventory of the taxpayer; or

(iii) *property held by the taxpayer primarily for sale to* customers in the ordinary course of its trade or business;

(b) "performance" of "services," that constitute "business activities" other than those listed in (a);

(c) any combination of (a) or (b).

In this case, it is undisputed that the royalty income in question derived from the licensing of trademarks and trade names and not the performance of services. As such, (2)(b) and (c) in the *PM One* analysis are irrelevant. After the exclusion of those factors, resolution of the instant case requires this Court to resolve three questions. First, whether the royalty income in question constituted gross receipts; second, whether the royalty income arose from the transfer of title or possession; and third, whether the trademarks and trade names in this case constituted applicable forms of property under the SBTA. These three questions will be analyzed in turn.

A. GROSS RECEIPTS

As previously discussed, under MCL 208.7(3), gross receipts were calculated by adding together sales and rental or lease receipts. Because what constitutes gross receipts relies on the meaning of sales, and the definition of "sales" relies on the definition of "gross receipts," this Court has noted that the definitions are "somewhat circular" and that resolution of the sales

prong of gross receipts requires analyzing the remaining elements of a sale under the SBTA. See *PM One*, 240 Mich App at 261-262. As such, the sales portion of this gross-receipts analysis will be undertaken later in this opinion.

The second prong of the gross-receipts calculation is rental or lease receipts. In the past, this Court has distinguished between royalties and rent for SBTA purposes and indicated that the two categories were mutually exclusive given their differing natures and treatment under the SBTA. *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 675-677; 649 NW2d 760 (2002); *Field Enterprises v Dep't of Treasury*, 184 Mich App 151, 157-159; 457 NW2d 113 (1990). Therefore, because the royalty income derived from licensing agreements did not constitute rental or lease receipts, whether or not royalty income constituted gross receipts under the SBTA depends on the conclusion of the sales analysis below.

### B. TRANSFER OF TITLE OR POSSESSION

In order to be properly classified as sales receipts under the SBTA during the years at issue, royalty income must have arisen from a transaction in which the royalty income was consideration for the transfer of title to, or possession of, property. MCL 208.7(1)(a) and (b). Therefore, if no transfer of title or possession was involved in the transaction giving rise to the royalty income, then no further analysis is needed and the royalty income cannot be classified as sales receipts. There is no dispute that no transfer of title occurred in this case, so the only question here is whether or not the royalties arose from the transfer of possession of property.

While the term "royalties" was not defined under the SBTA, it was defined by our Supreme Court in *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 475; 373 NW2d 730 (1985), a case involving "the taxation of oil and gas royalties under Michigan's Single Business Tax Act . . . ." The *Mobil Oil* Court looked to the definition of "royalty" in both *The Random House College Dictionary* (rev ed) and Black's Law Dictionary (5th ed) and determined that "the common understanding of royalties" is that they are compensation paid to the owner of certain types of property, such as intangible property or natural resources, for the use of that property. *Id.* at 484-485. Under this common definition, then, royalty income derives from the transfer of *the right to use property*, not from the transfer of *possession of property*. Moreover, petitioners' ownership of the intangible property in this case was not transferred to the licensee, but remained with the licensor. As such, royalty income does not appear to have arisen out of a qualifying transaction.

Respondent, however, challenges this understanding of royalty transactions, citing *SBC Teleholdings, Inc v Dep't of Treasury*, 17 MTTR 645 (Docket No 320440, March 17, 2010), a conflicting Tax Tribunal case decided after posthearing briefs had been filed in the instant case. In *SBC Teleholdings*, the tribunal concluded that "acquisition and use of the name and marks constitutes 'possession' of the intangibles . . . . " *Id.* at 4. As a result, the retention of title by a licensor of intangible property does not preclude the licensor from transferring possession of the intangible property to another. *Id.* at 5.

This interpretation, however, is at odds with the common understanding of possession. When a term is undefined, a court may establish its meaning through a

dictionary definition. *Citizens Ins Co v Pro–Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007). Black's Law Dictionary (9th ed) defines "possession" as "[t]he fact of having or holding property in one's power; . . . [t]he right under which one may exercise control over something to the exclusion of all others; . . . [or] [s]omething that a person owns or control[s]." While the licensees in the instant case have the right to use the intangible property licensed to them, they do not own or control that intangible property; ownership and control remain with petitioners. See *Detroit Lions, Inc v Dep't of Treasury*, 157 Mich App 207, 214-219; 403 NW2d 812 (1986). Given the fact that royalty payments are made for the use of a right, the fact that the licensor retains ownership and control of the intangible property that is generating the royalty payments, and this Court's instruction that transfers of possession involve the transfer of absolute ownership, it is clear that royalty income does not arise from a transaction involving the transfer of possession of property. As such, it was rightly excluded from calculation of the sales factor and the gross receipts for the tax years at issue.

### C. APPLICABLE FORMS OF PROPERTY

However, even if this Court deems that royalty income arises from the transfer of possession of property, the requirements for a sale are still not met unless the property is of a type identified under the SBTA. The first of these types of applicable property is "stock in trade," a term that was undefined in the SBTA. MCL 208.7(1)(a). Black's Law Dictionary (9th ed) defines "stock in trade" as follows:

> 1. The inventory carried by a retail business for sale in the ordinary course of business. 2. The tools and equipment

owned and used by a person engaged in a trade. 3. The equipment and other items needed to run a business.

The property in question in this case, trademarks and trade names, cannot be considered inventory, tools, or equipment.

The second form of applicable property is "property of a kind which would properly be included in the inventory of the taxpayer . . . ." MCL 208.7(1)(a). In this case, petitioners presented evidence in the form of an affidavit stating that the intangible property at issue was not included in petitioners' inventory, and respondent did not submit evidence challenging this accounting decision.

The third and final form of applicable property is "property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business . . . ." MCL 208.7(1)(a). In this case, it is undisputed that the intangible property at issue was licensed only to affiliated parties, not "customers" or other unaffiliated third parties. Moreover, the intangible property at issue in this case was developed, held, and licensed for the purposes of establishing a common corporate identity and common business procedures amongst affiliated entities.

Therefore, because the royalty income in this case did not arise from the transfer of possession of an enumerated type of property, it did not constitute sales receipts under the SBTA for the tax years at issue. Further, because royalty income does not constitute sales or rental or lease receipts, it also does not constitute gross receipts under the SBTA for the tax years at issue. As such, the Tax Tribunal did not err by concluding that royalty income should not be included in petitioners' sales-factor and gross-receipts calculations for the tax years at issue.

Respondent also argues that because the SBTA definition of "sales" was amended to exclude royalties in the tax years beginning after December 31, 2000,[4] and because that amendment took effect prospectively, the Legislature did not intend royalties to be excluded before the enactment of that amendment. Respondent recognizes that statutory amendments can be "intended to clarify the meaning of a provision rather than change it," but argues that "[i]t would be illogical for the Legislature to adopt language intended to clarify the previous language and make the clarification prospective only." This argument is without merit. There is nothing inherently inconsistent between clarifying a statute's meaning and making an amendment prospective. Indeed, when no appellate court has rendered a decision contrary to the amended language, this would seem to be an obvious legislative procedure.

Moreover, the legislative bill analysis clearly indicates the clarifying nature of the amendment of the definition of sales in the SBTA. Although our Supreme Court has eschewed reliance on bill analyses to determine legislative intent, *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001), legislative bill analyses do have probative value in certain, limited circumstances, *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 170; 744 NW2d 184 (2007). Here, we find some persuasive value in considering the following in connection with 2000 PA 477:

> [R]epresentatives of the treasury department and the business sector have been working for several months to provide a clearer, less circular definition of the term "gross receipts" in the SBT act and to alter the act to make it conform to a recent Michigan Court of Appeals decision,

---

[4] See MCL 208.7(1)(b), as amended by 2000 PA 477.

*PM One, Limited v Department of Treasury.* [House Legislative Analysis, SB 1300, November 29, 2000, p 1.]

In light of our analysis in *PM One* and the language of the statute, we reject respondent's contention that the amendment only took effect prospectively.

Affirmed.

FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ., concurred.