# STATE OF MICHIGAN

# COURT OF APPEALS

LOWE'S HOME CENTERS, INC.,

Petitioner-Appellee,

UNPUBLISHED
December 30, 2014

v

No. 317986
Tax Tribunal

CITY OF GRANDVILLE,

LC No. 00-414842

Respondent-Appellant.

Before: RONAYNE KRAUSE, P.J., and FRANK KELLY and STEPHENS, JJ.

PER CURIAM.

This appeal arises out of an ad valorem property tax assessment for the tax years 2011 and 2012. The subject property consists of a 13.86-acre parcel of land at 4705 Canal Avenue in the City of Grandville, improved with a freestanding, single-tenant big-box retail store originally constructed as a build-to-suit structure for Lowe's Home Centers in 2000. After hearings on petitioner's challenge to respondent's tax assessment, the Michigan Tax Tribunal (the tribunal) rejected respondent's assessment and found in favor of petitioner. We affirm.

## I. FACTS

Respondent made the following valuations of the subject property: (1) for 2011, the true cash value (TCV) of the property was determined to be $8,507,800, the assessed value (AV) was determined to be $4,253,900, and the taxable value (TV) was determined to be $4,055,796; (2) for 2012, the TCV was determined to be $8,493,400, the AV was determined to be $4,246,700, and the TV was determined to be $4,165,302. Petitioner contended that the property was assessed in excess of 50% of its TCV, in violation of Const 1963, art X, § 3, and requested that the equalized value and taxable value be reduced to $2,210,000 for the 2011 tax year, and $2,125,000 for the 2012 tax year.

The tribunal held an evidentiary hearing on petitioner's challenge in June 2013, at which the primary witnesses were Laurence Allen, expert appraiser for petitioner, and Eugene Szkilnyk, expert appraiser for Grandville. Both appraisers testified that the purpose of their

respective appraisals was to determine the TCV of the fee simple interest[1] in the subject property. Both equated TCV with market value or usual selling price, i.e., the price a potential buyer would agree to pay a potential seller disregarding current occupancy and any improvements made for the benefit of the current occupant's business. Allen appraised the subject property using a sales-comparison approach and an income-capitalization approach. He did not provide an appraisal using a cost approach because he considered it an unreliable method of determining the market value of the particular subject property, and because prospective buyers of such property did not generally make their decisions to purchase based on a cost-approach appraisal. Szkilnyk provided appraisals using all three approaches.

In his sales-comparison appraisal, Allen used seven comparables of vacant and available big-box retail stores to value the TCV of the subject property at $4,470,000 for 2011, and $4,260,000 for 2012. For his income-capitalization appraisal, he determined market rental rates for the subject property by examining 20 big-box buildings that were leased or offered for lease, and seven original build-to-suit leases. After making necessary adjustments for differences between the comparable properties and the subject properties, he valued the subject property at $4,270,000 for 2011, and $4,220,000 for 2012. Reconciling the two appraisals, Allen gave greater weight to the sales-comparison approach and explained why he thought it the best indicator of the TCV of the subject property. Allen concluded to a final TCV of $4,420,000 for 2011, and $4,250,000 for 2012.

In his sales-comparison appraisal, Szkilnyk examined four big-box properties, vacant and available at the time of sale, and one that sold in a leased-fee transaction. He assigned a weight to each comparable based on its similarities and differences to the subject property with respect to location, functional utility, and use. After analyzing the comparables, making desired adjustments, and determining weight allocations, he concluded to a TCV of the subject property of $5,500,000 for 2011, and $5,700,000 for 2012. For his income-capitalization appraisal, he determined the market rental rates for the subject property by examining the leases of seven retail buildings, one of which was an original build-to-suit lease. He adjusted the comparables to reflect material differences between them and the subject property. Although all the comparables were smaller than the subject property, he made no adjustments for size. After examining the leases, making his adjustments, and determining the weight for each of the comparables, Szkilnyk concluded that the final TCVs based on the income-capitalization approach was $8,100,000 for both 2011 and 2012. For his cost-approach appraisal, Szkilnyk used the Marshal Valuation Service for a Class C Mega Warehouse Discount Store to determine the cost to replace the Lowe's store, added indirect costs and entrepreneurial profit, calculated

---

[1] A fee simple interest is an interest in the property subject only to the four powers of the government, namely, taxation, eminent domain, police power, and escheat. *The Appraisal of Real Estate*, (Chicago: Appraisal Institute, 12th ed, 2001), pp 70, 80. By contrast, a leased fee interest is the lessor's or landlord's interest, which may include such rights as the right to be paid rent, the right of repossession after termination of the lease, and the right of disposition variously defined. *The Appraisal of Real Estate*, 12th ed., p 81.

depreciation and obsolescence, and added the land value. He arrived at a TCV of $5,900,000 for 2011, and $5,400,000 for 2012.

In reconciling the three approaches, Szkilnyk gave the greatest weight to the income-capitalization approach, explaining that this approach was "usually given the greatest weight when evaluating investment properties." He acknowledged, however, that the subject property was not an investment property, that an owner-user would be the most likely purchaser of the subject property, and that the income-capitalization approach "does not represent the primary analysis undertaken by the typical owner-user." Nevertheless, he assigned the income-capitalization approach a weight of 60%. He gave the sales-comparison a weight of 25%, explaining that this approach is "generally one of the most reliable valuation approaches in an active market," and "is typically one of the most relevant valuation methods for owner-user properties." In this case, however, Szkilnyk thought it less reliable "because none of the existing big-box properties are truly comparable to the subject." Finally, he assigned the cost approach a weight of 15%, explaining that the building was 10 years old, and that "quantifying accrued depreciation becomes increasingly difficult via market extracted evidence as the property increases in age." Reconciling the values from the three approaches, Szkilnyk arrived at a final TCV of $7,100,000 for both tax years at issue.

The tribunal determined that neither party's valuation of the subject property offered a "fully supportable indicator" of the subject property's TCV as of the tax years at issue, but that there was "sufficient evidence to allow the tribunal to make an independent determination of [TCV]." The tribunal opined that respondent's cost approach analysis was not helpful in assisting it to make an independent determination of the TCV because the method did not adequately account for the type of functional obsolescence characteristic of big-box retail properties. The tribunal recounted that both appraisers had established that big-box retailers were not motivated by resale of their property. Such retailers specifically construct their stores to meet "the design, location, and physical requirements of one major retailer's needs, and construction costs are incurred without regard to whether they add to the true cash value of the property." Second generation buyers of these properties usually have to modify the existing improvements extensively, or demolish them altogether in order to construct a store to meet their own requirements. The tribunal stated that, although respondent's appraiser attempted to account for such factors in his appraisal, the tribunal believed it "extremely difficult to accurately determine both depreciation and obsolescence using the cost approach," and that the cost approach was generally "most applicable to new or relatively new construction." The tribunal concluded his analysis of respondent's cost approach by adding that it had "substantive concerns with Mr. Szkilnyk's cost calculations," and, therefore, would "give no weight to Respondent's cost approach in making its determination of true cash value (usual selling price)."

The tribunal observed that both appraisers had considered the income-capitalization approach and "each concluded that it provided a reliable indication of value for the subject property." The tribunal agreed with this assessment, but submitted that "the relevance of a valuation approach is directly related to property type," and quoted a passage from *The Appraisal of Real Estate*, 13th ed, stating that "[t]ypically, the sales comparison approach provides the most credible indication of value for owner-occupied commercial and industrial properties…. These types of properties are amenable to sales comparison because similar

properties are commonly bought and sold in the same market." Appraisal Institute, *The Appraisal of Real Estate*, 13th ed (Chicago: Appraisal Institute, 2008), p 382.

With respect to Szkilnyk's income-capitalization appraisal, the tribunal noted that his reasoning and admissions contradicted his decision to assign the greatest weight to this approach, and that his lease comparables were insufficiently similar to the subject property to be considered more reliable indicators of value than petitioner's lease comparables. The tribunal also noted that Szkilnyk failed to make various necessary adjustments to the comparables and to account for region-specific costs in estimating operating expenses. The tribunal found petitioner's income analyses better supported by the evidence and testimony. For these reasons, the tribunal concluded that it would give more weight to petitioner's income-capitalization approach than to respondent's in making its own TCV determination.

After assessing all the evidence, the tribunal determined that the sales-comparison approach was the valuation methodology most useful in assisting it to make an independent determination of the subject property's TCV. The tribunal determined that the most weight should be given to three of the parties' four mutual comparables, excluding one as an outlier, and that primary consideration should be given to petitioner's adjusted sales prices because they were "better supported by the record." Based on these guidelines, the tribunal concluded - a rounded TCV of $4,485,000 for 2011, and $4,440,000 for 2012. Respondent filed a timely appeal.

## II. STANDARD OF REVIEW

Where, as here, fraud is not claimed, an appellate court "reviews the Tax Tribunal's decision for misapplication of the law or adoption of a wrong principle." *Briggs Tax Service, LLC v Detroit Public Schools*, 485 Mich 69, 75; 780 NW2d 753 (2010). We deem the tribunal's factual findings conclusive "if they are supported by "competent, material, and substantial evidence on the whole record." *Id*., (quotation marks and footnote omitted). Substantial evidence is "more than a scintilla of evidence, though it may be substantially less than a preponderance of the evidence." *Leahy v Orion Twp*, 269 Mich App 527, 529-530; 711 NW2d 438 (2006). Where statutory interpretation is involved, we review the tribunal's decision de novo. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 537; 831 NW2d 255 (2012). "The overriding goal of statutory interpretation is the determination of legislative intent and the implementation of that intent once discerned." *Kelly Services, Inc v Dep't of Treasury*, 296 Mich App 306, 311; 818 NW2d 482 (2012).

## III. ANALYSIS

Respondent contends that the tribunal erred by relying primarily on the sales-comparison approach in making its own determination of the subject property's value and by refusing to consider leased fee transactions.[2] We disagree.

---

[2] During the pendency of this appeal, another panel of this Court issued an opinion addressing substantially similar issues in cases brought by Lowe's Home Centers and Home Depot See

True cash value (TCV) is the starting point for determining the taxable value of real and personal property. *Detroit Lions*, *Inc v City of Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013). MCL 211.27(1) provides the following basic definition of TCV:

[T]rue cash value means the usual selling price at the place where the property to which the term is applied is at the time of the assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale. MCL 211.27(1).

MCL 211.27(1) also provides a nonexhaustive list of factors an assessor must consider when determining TCV. However, the statute does not mandate any specific approach to calculating TCV. *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007). "Any method which is recognized as accurate and reasonably related to fair market valuation is an acceptable indicator of [TCV]." *Safran Printing Co v City of Detroit*, 88 Mich App 376, 380; 737 NW2d 187 (2007). The sales-comparison approach is one of three traditional, acceptable, and reliable methods of determining TCV, along with the cost approach and the income-capitalization approach. *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 484-485, 473 NW2d 636 (1991).

Even though petitioner has the burden of proving TCV, MCL 205.737(3), the tribunal must make its own independent determination of TCV. *Great Lakes Div of Nat Steel Corp v City of Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998). In so doing, the tribunal is required to consider "multiple approaches to determine a property's true cash value." *Pontiac Country Club v. Waterford Twp.*, 299 Mich App 427, 435, 830 NW2d 785 (2013). It is required to apply its expertise to the facts of a case, *Great Lakes*, 227 Mich App at 389, and "to select the method which is most accurate after considering all the facts before it." *Huron Ridge LP*, 275 Mich App at 28. The tribunal may accept, reject, or combine the parties' valuation theories on the way to its goal of accurately assessing a given property's market value. *Jones & Laughlin Steel Corp v Warren*, 193 Mich App 348. 356; 483 NW2d 416 (1992). The credibility of witnesses and the weighing of the evidence presented falls within the tribunal's discretion. See *Great Lakes*, 227 Mich App at 407, 413.

We find that the tribunal did not err by relying primarily on the sales-comparison approach to form its independent valuation of the subject property. The record shows that the tribunal considered the general relevance of the three aforementioned traditional approaches to valuing the subject property, analyzed the strengths and weaknesses of each appraiser's particular calculations under the different approaches, and explained the reasoning behind its independent determination of value. The tribunal assessed the credibility of the witnesses, weighed the documentary evidence presented by the parties' expert witnesses, and drew on its own expertise to conclude that the subject property's TCV could most accurately be determined by relying primarily on the sales-comparison approach, using specified comparables. These choices reflect the tribunal's weight and credibility determinations and are supported by competent, material, and substantial evidence overall, We defer to the tribunal's judgment in

---

*Lowe's Home Centers, Inc v Marquette Twp*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2014 (Docket Nos. 314111 and 314301).

such matters, *Detroit Lions, Inc*, 302 Mich App at 703, and find the tribunal's decisions to be a proper exercise of its discretion and expertise.

Respondent also charges the tribunal with violating MCL 211.27(1) by failing to consider the existing use and present economic income of the subject property as a continuously-occupied, successful home improvement store, erroneously presuming that the highest and best use of the property could not be its existing use, and hypothesizing a sale that Lowe's had no intention of making. We disagree.

When determining the TCV of property, assessors must consider, among other things, the property's "existing use" and the "present economic income" of its structures and land. MCL 211.27(1). Existing use is relevant to the fair market value of property because it may be indicative of the use to which a potential buyer would put the property. *Detroit Lions*, *Inc*, 302 Mich App at 697. In the instant case, both appraisal experts—respondent's as well as petitioner's—classified the "existing use" of the subject property as commercial retail. The tribunal adopted this classification in its own determination of the property's value. Respondent's argument on appeal that the exiting use of the subject property as improved should be as a "continuously-occupied, successful home improvement store" attempts to include in the property's TCV a measure of value attributable solely to the owner and the owner's use of the property.

As our Supreme Court explained, "[t]he Constitution requires assessments to be made on property at its cash value. This means not only what may be put to valuable uses, but what has a *recognizable pecuniary value inherent in itself, and not enhanced or diminished according to the person who owns or uses it.*" *Edward Rose Bldg Co*, 436 Mich at 640-41. (internal quotation marks and citations omitted). Therefore, even if the subject property is in fact continuously-occupied and successful, these characteristics of the property are not relevant for determining the property's TCV. They are accidents of ownership, not measures of value inherent to the property itself, and the tribunal did not misapply the law nor adopt a wrong principle by categorizing the existing use of the subject property as improved as commercial retail.

For the same reasons, the tribunal did not err when it categorized the subject property's highest and best use (HBU) as improved as commercial retail rather than as a continuously-occupied, successful home improvement store. Highest and best use "recognizes that the use to which a prospective buyer would put the property will influence the price which the buyer would be willing to pay." *Edward Rose*, 436 Mich at 633. Respondent's contention that the property's HBU is to continue its existing use as an operating home improvement store is another attempt to incorporate value-in-use, or use-value,[3] into the calculation of the subject property's value, contrary to Michigan law. The HBU is informed by the existing use, but not by the specific use of a particular existing user. *Edward Rose Bldg Co*, 436 Mich at 640-641.

---

[3] Value-in-use, or use-value, is "[a] value established by the utility of an object instead of its value upon selling or exchanging it." *Black's Law* Dictionary (7th ed).

With respect to "present economic income," the tribunal concluded that the owner-occupied subject property was not an income-producing property and had no history of an income stream. However, respondent contends that the tribunal should have included the property's "actual income," i.e., customer sales receipts, into its consideration of present economic income. This argument is irrelevant because, in the sales-comparison approach to valuing the fee simple interest of a subject property, TCV is based on the sale price of the property sold unencumbered by a lease or a tenant; i.e., as if the property were vacant and available. Vacant and available properties do not generate customer sales receipts. Therefore, the tribunal did not misapply the law or adopt a wrong principle when, in the context of the sale-approach valuation of the property, it did not consider the store's customer sales receipts.[4]

Respondent claims that the tribunal erred by valuing the subject property as if it were vacant and available because so doing ignores the reality that Lowe's is not interested in selling the property. We have previously stated, however, that whether an owner actually intends to sell the property being valued is irrelevant when determining TCV. *Safran Printing Co*, 88 Mich App at 382. Here, the fact that the subject property as improved was an allegedly successful Lowe's store that Lowe's had no intention of selling is irrelevant to the determination of the usual selling price, i.e., "the price that *could be obtained* for the property at a private sale . . . " MCL 211.27(1) (emphasis added). As the panel of this Court stated in *Lowe's Home Centers, Inc v Marquette Twp*, "[d]etermining the TCV requires determining the fair market value of the property as if the owner *were* to sell the property, regardless of whether or not the operating business intends to remain in business." *Lowe's Home Centers, Inc v Marquette Twp*, unpub op at 11. Therefore, the tribunal did not misapply the law or adopt a wrong principle by hypothesizing a sale of the property when determining the property's TCV.

To summarize, we find that the tribunal properly exercised its discretion and expertise in weighing and assessing the evidence presented at the hearing on petitioner's challenge to respondent's ad valorem tax assessment. We also find that competent, material, and substantial evidence supports the tribunal's methodological choices, and that the tribunal did not misapply the law or adopt wrong principles in making those choices. Nor did the tribunal misapply the law or appropriate wrong principles in determining the property's existing use, present economic income, or highest and best use, nor in hypothesizing a sale of the property in order to determine

---

[4] Respondent establishes that the tribunal has used sales receipts to determine market rent in an income-capitalization-based valuation. See *Kohl's Dep't Stores v Kentwood*, unpublished opinion per curiam of the Court of Appeals, issued June 17, 2004 (Docket No. 24963). However, appraisers may also determine market rent by using market leases of comparable properties, as did both appraisers in the instant case. See *Dep't Stores v Northville Twp*, MTT Docket 268318 (July 31, 2006). Respondent cites no authority stating that sales receipts *must* be used to calculate market rent, and has not argued that its appraiser erred by using market leases instead of sales receipts. Therefore, the tribunal did not err when it did not consider customer sales receipts in its sales-comparison-based valuation, nor did the appraisers err by using market leases instead of sales receipts to calculate market rent for their income-capitalization appraisals.

its TCV under the sales-comparison approach.  In light of these conclusions, it is unnecessary to address respondent's claim that we should remand this matter to a different tribunal judge.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens