*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROSA HOLLIDAY,

        Plaintiff-Appellant,

v

SECRETARY OF STATE,

        Defendant-Appellee.

FOR PUBLICATION
August 30, 2024
9:00 a.m.

No. 372241
Court of Claims
LC No. 24-000122-MZ

---

CORNEL WEST FOR PRESIDENT 2024,
CORNEL WEST, MELINA ABDULLAH,
THOMAS HEIBEL, and MARIO NADHUM,

        Plaintiffs-Appellees,

v

SECRETARY OF STATE,

        Defendant-Appellant,
and

BUREAU OF ELECTIONS DIRECTOR,

        Defendant.

No. 372255
Court of Claims
LC No. 24-000134-MB

---

MICHIGAN DEMOCRATIC PARTY and
LAVORA BARNES,

        Plaintiffs-Appellants,

v

No. 372256
Court of Claims

-1-

SECRETARY OF STATE and BUREAU OF
ELECTIONS DIRECTOR,

LC No.   24-000115-MB

Defendants-Appellees.

_____

Before:  N. P. HOOD, P.J., and LETICA and YOUNG, JJ.

PER CURIAM.

In these consolidated appeals,[1] various parties challenge the August 24, 2024 order of the Court of Claims which rejected challenges to the placement of Cornel West and Melina Abdullah on the November general election ballot as independent candidates for the offices of President and Vice President of the United States.  Finding no errors warranting relief, we affirm.

I.  FACTS

The Michigan Election Law, MCL 168.1 *et seq.*, allows those who seek to run for the office of President of the United States without party affiliation to do so by submitting a "qualifying petition" containing a sufficient number of valid signatures (at least 12,000) to the Secretary of State by 4:00 p.m., 110 days prior to the general election.  See MCL 168.590a, MCL 168.590b, and MCL 168.590c; *Graveline v Benson*, 992 F3d 524 (CA 6, 2021).  Cornel West and Melina Abdullah, who are seeking the offices of President and Vice President respectively, filed affidavits of identity (AOIs) and qualifying petitions with the Secretary of State on June 17, 2024, so they may obtain ballot access in Michigan as independent candidates.

On July 23, 2024, Rosa Holliday filed a challenge with the Bureau of Elections.  Holliday contended that the AOIs filed by West and Abdullah were defective and that MCL 168.692a prohibited them from running as independent candidates in Michigan where West and Abdullah are seeking election to the same offices in other states, but as affiliated candidates with various political parties.  The Bureau of Elections notified West of the challenge via e-mail on July 26, 2024, and stated that any response was due by August 2, 2024.  No response was submitted by West or his campaign.

While that challenge was being reviewed by the Bureau of Elections, the Michigan Democratic Party (MDP) filed the first of the three lawsuits involved in this appeal, Case No. 24-000115-MB, in the Court of Claims.  This suit was filed on August 6, 2024.  The MDP sought an order disqualifying West and Abdullah from the November ballot.  On August 12, 2024, which was also before the Bureau of Elections had reached a decision on Holliday's challenge, Holliday filed suit in the Court of Claims, which became Case No. 24-000122-MZ.  Holliday similarly requested an order disqualifying West and Abdullah from appearing on the November ballot.

_____

[1] *Holliday v Secretary of State*, unpublished order of the Court of Appeals, entered August 27, 2024 (Docket Nos. 372241, 372255, and 372256).

On August 16, 2024, the Director of Elections, Jonathan Brater, informed West and Abdullah that the notarization of West's AOI was not executed in conformity with Colorado's Revised Uniform Law on Notarial Acts (RULONA), Colo Rev Stat, §§ 24-21-501 et seq. Before issuing the decision, the Director consulted with the Colorado Secretary of State, who reviewed West's AOI and concluded that the notarization did not comply with Colorado law. The Director identified four violations of Colorado law: (1) the AOI was notarized despite the fact that the document contained unfilled blanks in violation of Colo Rev Stat, § 24-21-525(7); (2) the notary certificate did not identify what notarial act was being performed in violation of Colo Rev Stat, § 24-21-516(1); (3) the notary certificate did not include the notary public's title of office in violation of Colo Rev Stat, § 24-21-516(1); and (4) the notary public's stamp was placed on a separate sheet of paper and not included with the notary public's certificate in violation of Colo Rev Stat, § 24-21-516(1). The Director further explained that, under Michigan law, strict compliance was the standard, and because the AOI was not notarized in strict compliance with the laws of Colorado (the state where it was notarized), MCL 168.558(4) required that West be disqualified from appearing on the ballot. Moreover, because only a presidential candidate may file to have a vice-presidential candidate listed as candidate for vice president, see MCL 168.590d, this meant that Abdullah was likewise disqualified. The Director declined to consider the other challenges made by Holliday in light of that conclusion. The letter gave West five days to respond to the determination if he wished to do so.

When the Director issued this determination, no response to Holliday's challenge had been received from anyone associated with West or his campaign. Subsequently, on August 19, 2024, West and Abdullah filed notices that they wished to intervene in the two pending Court of Claims matters. On August 20, 2024, the two pending cases in the Court of Claims were consolidated, with the Holliday case being reassigned to the same Court of Claims Judge before whom the MDP case was pending. After a status conference held on August 21, 2024, arguments were set for August 23, 2024, on the two pending cases. The court also directed that any candidate wishing to intervene file a complaint in the Court of Claims by 3:00 p.m. that afternoon. West and Abdullah, along with other plaintiffs, then filed their complaint, seeking declaratory and mandamus relief against the Secretary of State and compelling their inclusion on the ballot. This suit, Case No. 24-000134-MB, was consolidated with the MDP and Holliday matters.[2]

The Court of Claims held a hearing on August 23, 2024, which combined oral argument on all three cases. On August 24, 2024, the Court of Claims issued the opinion and order challenged in these appeals. While all parties accused others of delays resulting in prejudice, the Court of Claims declined to apply the doctrine of laches to bar any of the suits. The Court of Claims then held that West and Abdullah, as candidates for the offices of President and Vice President of the United States, were not required to file AOIs under the language of MCL 168.558(1). That rendered any defects in the AOIs irrelevant. As a result, the court denied the requests for mandamus relief, declaratory judgment, and injunctive relief sought by the MDP and Holliday.

---

[2] West also filed a motion seeking leave to file an amicus curiae brief in the MDP and Holliday matters, which was allowed. Motions to intervene in those matters were denied.

The court then explained that it would still address the challenges to the AOIs in the event that an appellate court disagreed with its interpretation of MCL 168.558(1). The court opined that under Colorado law, the notarization of West's AOI was "not void or invalid" and "also included all information required under Michigan's notary laws." The court held that West was improperly disqualified by the Director on that basis. The court then turned to a challenge premised on the fact that West and Abdullah seek to run as independent candidates in Michigan but are simultaneously running as candidates affiliated with other parties in a number of other states. The court held that even accepting that West and Abdullah "are affiliated with these political parties in each respective state," that was "insufficient evidence to render either candidate's respective AOI invalid." The court explained that the AOI required West and Abdullah to identify the party affiliation with which they wished to have appear on Michigan ballots, and that both stated they were running without any party affiliation. That they were running as affiliated candidates in other states did not prove that either made a false statement on their AOIs filed in Michigan.

Finally, the court addressed a challenge to Abdullah's AOI. Abdullah's AOI stated that she wished for her name to be printed on the ballot in Michigan as "Cornel West". The court described this as an error on the AOI, but held that it would not disqualify West from appearing on the ballot because under MCL 168.590d(2), West had until August 31, 2024 to file with the Secretary of State the name and address of his chosen running mate.

At the time the Court of Claims issued its opinion, West and Abdullah had submitted just shy of 27,000 petition signatures, and a staff report had estimated that about 16,000 of these signatures were valid. The Court of Claims explained that West and Abdullah were required to submit at least 12,000 valid signatures. But when the opinion was issued, the Board of State Canvassers had not yet convened to determine whether a sufficient number of petition signatures had been submitted.[3] Thus, the court's order denied the requests for relief made by the MDP and Holliday, but granted the request for a writ of mandamus made by West and Abdullah in their complaint. The court's order states that the state defendants "are ordered to qualify West and Abdullah as independent candidates for the ballot, on the condition that the Board of State Canvassers does not determine they are disqualified after a review of the signatures on the qualifying petitions and West complies with MCL 168.590d(2)."[4]

The present appeals quickly followed. We now turn to the merits of the issues raised.

---

[3] The transcript of the hearing held in the Court of Claims reflects that there had been some discussion of staying the Court of Claims matters to await a decision from the Board, but that ultimately the decision was made to move forward with the Court of Claims matters and resolve them as quickly as possible.

[4] The Board of State Canvassers then convened on Monday, August 26, 2024, and considered whether West and Abdullah submitted enough valid signatures to appear on the November ballot. In a three-to-one vote, the Board determined that a sufficient number of valid signatures were submitted. Holliday has recently sought mandamus relief in this Court, challenging the Board's decision, in Docket No. 372267. That complaint remains pending in this Court at this time.

## II. ANALYSIS

## A. MANDAMUS RELIEF GENERALLY

The Court of Claims granted relief in the form of a writ of mandamus. Mandamus is a discretionary writ, and so this Court reviews the decision whether to grant mandamus relief for an abuse of discretion. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016).

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. In relation to a request for mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided. [*Id.* (quotation omitted).]

"We review de novo, as questions of law, whether [a] defendant[ has] a clear legal duty to perform and whether [a] plaintiff has a clear legal right to performance of any such duty." *Id.*

## B. LACHES

Holliday, the Secretary of State, and the Director[5] argue that the Court of Claims erred when it concluded that the doctrine of laches does not bar West from challenging his disqualification from the ballot. We disagree.

In *Nykoriak v Napoleon*, 334 Mich App 370, 382-383; 964 NW2d 895 (2020), another election matter, this Court explained the doctrine of laches:

> As explained in *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 589; 939 NW2d 705 (2019):
>
>> Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time. To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay. Typically, [l]aches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier. [Quotation marks and citations omitted; alteration in original.]

---

[5] The MDP does not argue in its brief on appeal that laches should bar relief.

"This doctrine applies to cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 252; 704 NW2d 117 (2005) (quotation marks and citation omitted). The doctrine of laches applies in actions in which equitable relief is sought. MCL 600.5815. Moreover, in election cases, MCL 691.1031 creates a rebuttable presumption of laches:

> In all civil actions brought in any circuit court of this state affecting elections, dates of elections, candidates, qualifications of candidates, ballots or questions on ballots, there shall be a rebuttable presumption of laches if the action is commenced less than 28 days prior to the date of the election affected. This section shall not apply to actions brought after the date of the affected election.

"This Court . . . reviews de novo a trial court's decision to apply equitable doctrines such as laches." *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 4439 (2013).

In the present matter, Holliday, the Secretary of State, and the Director generally argue that West's failure to respond to the challenge filed with the Secretary of State by Holliday and the timing of his actions in the Court of Claims should result in the application of laches to bar him from challenging his disqualification. The parties also chastise the Court of Claims for addressing the argument in what they believe is conclusory fashion stated in a footnote. That footnote explained that everyone claimed prejudice resulting from delays by the opposing side. The Court of Claims noted that MCL 691.1031 creates a rebuttable presumption of laches if an action is commenced less than 28 days prior to the election. The court then stated that, while ballot preparation deadlines are looming, "given the time remaining until the general election, the Court declines to apply the doctrine of laches to preclude the parties' claims and defenses." The court's reasoning is succinct, but clear: because these matters were all filed well before the point in time in which a rebuttable presumption of laches would arise by statute, and there was sufficient time to adjudicate the matters before ballots must be finalized, the court did not believe that applying the doctrine was appropriate.

We agree with the Court of Claims. Clearly, MCL 691.1031 does not create a rebuttable presumption of laches in this matter where West's suit was filed far more than 28 days before the November election. And as it pertains to West, he filed his suit in the Court of Claims within a few days of receiving the Director's letter explaining the basis for disqualifying him from the ballot. While West may have been wise to respond to Holliday's challenge before that determination was made, we do not believe that his failure to do so is a basis on which to refuse to allow him to challenge that disqualification. West acted with sufficient diligence after the Director disqualified him.

Nor can we conclude that anyone established prejudice. The Secretary of State and Director argue that, by failing to respond to Holliday's challenge, they were left to resolve that challenge without West having made his position known. But the Director was still able to review the challenge, discuss the matter with the Colorado Secretary of State, and reach a conclusion. And, everyone is now well aware of West's positions on the relevant issues. Perhaps a response

before August 16, 2024 would have been of some help, but given the Secretary of State and Director remain unconvinced by West and Abdullah's arguments (as evidenced by the fact that they maintain in this Court that West should be disqualified because of alleged deficiencies in the notarization of his AOI), it seems clear that an answer from West would not have changed the Director's decision. It is true that election deadlines are looming, but the parties were still able to argue the merits of the matter before the Court of Claims, receive a thorough written decision from the Court of Claims, and seek appellate review in this Court. And with the timing of this Court's decision, the parties will also be able to seek review in the Supreme Court if they wish. We thus decline to hold that laches bars West from obtaining relief.

## C. INTERPRETATION OF MCL 168.558(1)

All appellants argue that the Court of Claims erred when it concluded that, under MCL 168.558(1), candidates seeking to run without party affiliation for the offices of President and Vice President of the United States are not obligated to file an AOI. We agree with the Court of Claims' resolution of the issue.

This Court reviews the interpretation of a statute de novo on appeal. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). As this Court has explained:

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*Id.* at 506 (quotation omitted).]

Words that are defined by statute are given the meaning ascribed by the Legislature. *TRYC v Mich Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). But words that are not defined by statute are given their plain and ordinary meaning. In doing so, this Court also considers the context in which the words are used. *PNC Nat'l Bank Ass'n*, 285 Mich App at 506.

MCL 168.558 generally explains the process for and requirements of filing an AOI. The provision at issue, MCL 168.558(1), explains:

> When filing a nominating petition, qualifying petition, filing fee, or affidavit of candidacy for a federal, county, state, city, township, village, metropolitan district, or school district office in any election, a candidate shall file with the officer with whom the petitions, fee, or affidavit is filed 2 copies of an affidavit of identity. A candidate nominated for a federal, state, county, city, township, or village office at a political party convention or caucus shall file an affidavit of identity within 1 business day after being nominated with the secretary of state. *The affidavit of identity filing requirement does not apply to a candidate nominated for the office of President of the United States or Vice President of the United States.* [Emphasis added.]

The dispute in this matter arises from the word "nominated" in the final sentence of the statute. Essentially, those challenging West's candidacy argue that he was not "nominated" for the office he seeks, as he instead followed the process for those seeking inclusion on the ballot as independent candidates. They argue that unlike candidates who are "nominated" by a political party at a party convention or caucus and then file "nominating petitions," an independent candidate "qualifies" for the ballot by filing a "qualifying petition" with the required number of signatures. Thus, according to West's challengers, he has not been "nominated" for the office he seeks, and so the final sentence of MCL 168.558(1) does not excuse him from the usual requirement that a candidate file an AOI.

We note at the outset that both this Court and the Michigan Supreme Court have indicated that this final sentence of MCL 168.558(1) encompasses *anyone* running for the office of President or Vice President of the United States. *In Citizens Protecting Michigan's Constitution v Secretary of State*, 503 Mich 42, 105 n 197; 921 NW2d 247 (2018), the Supreme Court wrote: "And it is also why *all* candidates for elective office in Michigan (except those running for president or vice president of the United States) are required to file an affidavit of identity. MCL 168.558." Similarly, in *Davis v Wayne Co Election Comm*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket Nos. 368615 and 368628); slip op at 19, this Court, relying on MCL 168.558(1), stated: "[T]he Legislature has made plain that those seeking to run for the office of President of the United States are not required to file an affidavit of identity."

We do not view either statement as controlling in this case. "Stare decisis does not arise from a point addressed in obiter dictum." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007). Obiter dictum is a "judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." *People v Higuera*, 244 Mich App 429, 437; 625 NW2d 444 (2001) (quotation omitted). In *Citizens Protecting Michigan's Constitution*, the question concerned a ballot initiative. The Court was not asked to decide the precise scope of this final sentence of MCL 168.558(1). And in *Davis*, the case involved a candidate running for the office of President of the United States as an affiliated candidate, not one running as an independent candidate. *Davis* had no occasion to consider the issue that is raised in the present matter, in which the challengers assert the statute draws a distinction between affiliated and independent candidates. Accordingly, while both this Court and the Supreme Court have made statements that indicate all candidates seeking the offices of President and Vice President of the United States are not obligated to file AOIs, we consider those statements to be obiter dictum that

is not binding under the principle of stare decisis. But these statements may be considered persuasive. *Higuera*, 244 Mich App at 437.[6]

And while we also do not consider it binding on this Court, we further note that in the Secretary of State's own guidance regarding appearing on the ballot as a presidential candidate, there is no mention of the filing of an affidavit of identity. The Secretary of State's guidance contains a detailed explanation of the process for affiliated candidates to access the primary ballot as presidential nominees, and how affiliated candidates then access the general election ballot, whether as affiliated with major or minor political parties. Following that is a section detailing how one may seek to have their name placed on the ballot as an independent candidate. This section directs such candidates to "submit a qualifying petition bearing a sufficient number of valid signatures, the name and address of his or her running mate, and the names, and addresses of his or her presidential electors. This section explains how many signatures are required, what signatures are valid, when and where to file the required documents, and how to withdraw a petition. Yet nowhere in this section is there any mention of MCL 168.558 or the filing of an affidavit of identity.[7]

The Michigan Election Law contains no definition of the word "nominated." As such, reference to dictionary definitions is appropriate. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). The word "nominate" is defined as "to appoint or propose for appointment to an office or place" and "to propose as a candidate for election to office". Merriam-Webster Online Dictionary <https://www.merriam-webster.com/dictionary/nominate>, accessed August 29, 2024. Notably, the definition does not state how or by whom one must be nominated. Rather, to be "nominated," in the context of an election, is commonly understood as simply being proposed as a candidate for election to an office. And West and Abdullah, through the qualifying petition process, have been proposed as candidates for election to the offices they seek by those who signed their qualifying petition.

The challengers, however, contend that in the context of MCL 168.558(1), one must understand the word "nominated" as being limited to those who are nominated by political parties,

---

[6] It is also true that "a decision of the Supreme Court is authoritative with regard to any point decided if the Court's opinion demonstrates application of the judicial mind to the precise question adjudged, regardless of whether it was necessary to decide the question to decide the case." *Higuera*, 244 Mich App at 437 (quotation marks and citation omitted). But with respect to the Supreme Court's statement, it arose in a footnote responding to the dissent regarding a wholly different topic, and was not, in our opinion, the application of the judicial mind to the disputed question that has arisen in this case. Thus, while we are loathe to set aside any statement of the Supreme Court, we do not believe that the Supreme Court has decided the issue presented in a binding decision.

[7] See *Ballot Access Information for Presidential Candidates Seeking Office in 2024*, <https://www.michigan.gov/sos/-/media/Project/Websites/sos/Elections/Candidate-information/Ballot-Access-Information-for-Presidential-Candidates.pdf?rev=8e3c7d68b727491899b56498a5eb61bf&hash=AC60AB2D3217F04302C4F87EC97B4D02> (accessed August 30, 2024).

and not those who obtain access to the ballot as independent candidates via qualifying petition. The challengers draw a distinction between those nominated via political parties (and who file nominating petitions) and those who run as independent candidates (by filing qualifying petitions), noting the different processes and terms used by the Legislature in the Michigan Election Code. Ultimately, the challengers believe that only those who obtain ballot access via "nominating petition" can be said to have been "nominated" and thus are excused from the AOI requirement by this last sentence of MCL 168.558(1).

We disagree. We begin by noting that which is absent from the final sentence of MCL 168.558(1): either of the terms "qualifying petition" or "nominating petition." Despite using those terms earlier in the very same statute, this final sentence does not state that those nominated *by nominating petition* are excused from the AOI requirement; nor does it state that those who are nominated by *qualifying petition* are not. It simply states that those who are "nominated for the office of President of the United States or Vice President of the United States" are not required to file an AOI. MCL 168.558(1).

Second, the statutory scheme describes a "qualifying petition" as a type of *nominating* petition. Specifically, MCL 168.590(1) provides: "For the purposes of this act, 'qualifying petition' means *a nominating petition* required of and filed by a person to qualify to appear on an election ballot as a candidate for office without political party affiliation." (Emphasis added.) Where this Court must give terms defined by statute the definition ascribed by the Legislature, that the Legislature has defined a "qualifying petition" as a type of "nominating petition" weighs heavily toward a conclusion that the word "nominated," as used in MCL 168.558(1), encompasses those who seek placement on the ballot as independent candidates via "qualifying petition."

And third, the Court of Claims also recognized another statutory indication that the final sentence of MCL 168.558(1) encompasses a candidate such as West. In MCL 168.590h(1), the Legislature has provided the form of qualifying petitions. And in that form, those signers of the petition state that they "nominate" the designated person as a candidate, "without party affiliation," for a particular office. MCL 168.590h(1).[8] This too leads to the conclusion that a "qualifying petition" is one method by which one may become *nominated* for an office.[9]

The challengers believe that the second sentence of MCL 168.558(1) provides meaning to the third. In the second sentence, the Legislature has explained when, exactly, candidates

---

[8] Contrary to arguments made by Holliday on appeal, the inclusion of the word "nominate" in this form is not the decision of a "form designer" or the work of the "arbitrary hands of scriveners." It is in the form created by the Legislature itself, and for which the Legislature has stated "must" be used. See MCL 168.590h(1) (stating, "The petition must be in the following form:", and then providing the form that is required, including the word "nominate").

[9] This is not to say that simply filing a qualifying petition with a sufficient number of signatures is the end of the process. Rather, the Board of State Canvassers must certify the signatures after canvassing them and considering challenges. See MCL 168.552(8) to (14). But the fact remains that an independent candidate who obtains ballot access via qualifying petition has been "nominated" for the office sought—that person has been proposed as a candidate for elected office.

"nominated for a federal, state, county, city, township, or village office *at a political party convention or caucus*" must file their AOI with the Secretary of State. MCL 168.558(1) (emphasis added). They argue that the use of the word "nominated" in the third sentence reflects the use of the same word in the second. According to the challengers, because the word "nominated" in the second sentence was clearly in reference to those nominated at political party conventions or caucuses, the word "nominate" in the third sentence must also mean to refer to those same persons.

We disagree. Undoubtedly, those nominated via convention or caucus are "nominated" for election to an office. But that does not mean that this is the *exclusive* method by which someone can be "nominated". The purpose of the second sentence of the statute is to explain when those nominated via nominating petitions must file AOIs—which is "within 1 business day after being nominated . . . ." MCL 168.558(1). No more, and no less. It is not a definition of the word "nominated" and does not somehow preclude a broader understanding of the word "nominated" in the final sentence as including those nominated via a different method.

This conclusion is further supported by Legislative history.[10] Prior to the enactment of 2002 PA 163, which was the first time that MCL 168.558(1) was amended to add a sentence excusing candidates for President and Vice President of the United States from filing AOIs, MCL 168.558(1) read as follows:

> When filing a nominating petition, filing fee, or an affidavit of candidacy, or within 1 business day of being nominated by a political party convention or caucus, for a county, state, national, city, township, village, or school district office in any election, a candidate shall file with the officer with whom the petitions or fee is filed 2 copies of an affidavit. The affidavit shall contain the candidate's name; address; ward and precinct where registered, if qualified to vote at that election; a statement that the candidate is a citizen of the United States; number of years of residence in the state and county; other information that may be required to satisfy the officer as to the identity of the candidate; a statement that, as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid; and a statement that the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both. If a candidate files the affidavit with an officer other than the county clerk or secretary of state, the officer shall immediately forward to the county clerk 1 copy of the affidavit by first class mail. The county clerk shall immediately forward 1 copy of the affidavit for state and national candidates to the secretary of state by first class mail. An officer shall not certify

---

[10] We acknowledge that Courts do not resort to Legislative history to cloud statutory text that is plain and unambiguous. *In re Certified Question from US Court of Appeals for Sixth Circuit*, 468 Mich 109, 116; 659 NW2d 597 (2003). And to be clear, we do not find the text of the statute ambiguous. But we nonetheless note that the history of the relevant statutes supports our interpretation of MCL 168.558(1).

to the board of election commissioners the name of a candidate who fails to comply with this section. [MCL 168.558(1), as amended by 1999 PA 217.]

At the same time, MCL 168.590(1), which has been unchanged since 1988, see 1988 PA 116, stated: "For the purposes of this act, 'qualifying petition' means a nominating petition required of and filed by a person to qualify to appear on an election ballot as a candidate for office without political party affiliation." Thus, it seems that prior to the enactment of 2002 PA 217, any person seeking to be placed on the ballot was required to file an "affidavit" (now an AOI), even if seeking the office of President or Vice President of the United States. There was no exception in the statute. And, where a "qualifying petition" was defined as a "nominating petition" by MCL 168.590(1), and the first sentence of MCL 168.558(1) imposed the affidavit filing requirement on those filing "nominating petitions", one could conclude that at least at that time, independent candidates for President or Vice President of the United States were also required to file the required affidavit.

But in 2002, the Legislature enacted 2002 PA 163. This act made several changes to various statutes. But the Legislative bill analyses[11] make clear that the main purpose of these alterations to the Michigan Election Law was to address concerns with candidates being able to have their titles (such as Assistant Attorney General or State Representative) listed on the ballots purportedly to avoid confusion where other candidates on the same ballot had similar names, but in reality, were requested for political gain.[12] But it also appears that the Legislature took the opportunity to reorganize and amend MCL 168.558. Now, MCL 168.558(1) provided:

> When filing a nominating petition, qualifying petition, filing fee, or affidavit of candidacy for a federal, county, state, city, township, village, or school district office in any election, a candidate shall file with the officer with whom the petitions, fee, or affidavit is filed 2 copies of an affidavit of identity. A candidate nominated for federal, state, county, city, township, or village office at a political party convention or caucus shall file an affidavit of identity within 1 business day after being nominated with the secretary of state. The affidavit of identity filing requirement does not apply to a candidate nominated for the office of president of

---

[11] Legislative bill analyses have limited value, but "do have probative value in certain, limited circumstances." *Kelly Servs, Inc v Dep't of Treasury*, 296 Mich App 306, 317; 818 NW2d 482 (2012).

[12] See Senate Committee Summary, HB 5335 (February 1, 2002); Senate Floor Analysis, HB 5335 (February 12, 2002); Senate Bill Analysis, HB 5335 (March 6, 2002); House Legislative Summary, HB 5335 (October 31, 2001); House Legislative Analysis, HB 5335 (December 4, 2001); and House Legislative Analysis, HB 5335 (July 22, 2002). These documents are available at <https://www.legislature.mi.gov/Bills/Bill?ObjectName=2001-HB-5335> (accessed August 30, 2024).

the United States or vice president of the United States. [MCL 168.558(1), as amended by 2002 PA 163.][13]

The Legislature then explained in MCL 168.558(2) what must be contained in the affidavit of identity, thus moving that language from where it had previously been in MCL 168.558(1) and setting it aside in a separate subsection. MCL 168.558(2), as amended by 2002 PA 163.

As we understand these revisions, the Legislature generally sought to make the statute easier to read by breaking up the cumbersome language of the former version of MCL 168.558(1) and spreading it into two subsections. It also appears that the Legislature wished to make clear that the AOI filing requirement applied to those seeking a place on the ballot by filing qualifying petitions. And, as is the focus of this matter, the Legislature made a significant, substantive change when it created the final sentence of MCL 168.558(1) that exists today, exempting those seeking the offices of President and Vice President of the United States from the AOI filing requirement.

All of this aids the conclusion that this final sentence applies to all candidates for those offices, and not just those who seek the office via nominating petition. First, the Legislature clearly had independent candidates in mind when it amended the statute. The Legislature specifically referenced those filing "qualifying petition[s]" in the first sentence of the statute, which it had not done previously. Yet the Legislature did not at the same time add any language to the statute indicating that those seeking the offices of President or Vice President of the United States as independent candidates (by filing qualifying petitions) would not be excused from filing AOIs. The Legislature simply referred to those "nominated" for these offices without further limitation.

Second, as we understand the second sentence of the statute as enacted in 2002, the Legislature's only intent was to take the language regarding when the necessary affidavit must be filed by certain candidates (those nominated at party conventions or caucuses) out of the first sentence of MCL 168.558(1) and set it aside in its own sentence. This reinforces our conclusion stated earlier in this opinion: the second sentence of MCL 168.558(1) as it presently exists simply concerns the timing of filing an AOI.[14]

Third, nowhere in the Legislative bill analyses is there any indication that, when it chose to include this final sentence of MCL 168.558(1), the Legislature had any thought that the exception would apply to affiliated candidates, but not those running as independents. There is virtually no discussion of the sentence in the analyses, other than mentions that the amendment would specify that the AOI filing requirement does not apply to those nominated for the offices of President or Vice President of the United States. And indeed, we have discovered no indication

---

[13] Currently, MCL 168.558(1) is almost identical. The only change has been to the first sentence, where the Legislature has added "metropolitan district" to the list of offices in which candidates must file an AOI. The words "metropolitan district were added by way of 2012 PA 586, which added the same phrase to a number of statutes.

[14] For those filing "qualifying petitions," the first sentence states the timing requirement: for those independent candidates required to file AOIs, the AOI must be filed at the same time one files their qualifying petition. MCL 168.558(1).

in the Legislative analyses that, in enacting 2002 PA 163, the Legislature ever considered having any rules be different for those running as independent candidates as opposed to those running with party affiliation.

In sum, we agree with the Court of Claims: as a candidate who has been nominated (via qualifying petition) for the office of President of the United States, West is not required to file an AOI under the plain and unambiguous language of MCL 168.558(1). And as a candidate for the office of Vice President of the United States, Abdullah likewise has no obligation to file an AOI. MCL 168.558(1). We do not believe that this leaves any portion of the statutory framework surplusage or nugatory. It simply recognizes that there are multiple ways that one can be "nominated" for an office—and that one such method is by qualifying petition. The Legislature has chosen to exempt those nominated for the offices of President and Vice President of the United States from the AOI filing requirement, regardless of the exact method of nomination. MCL 168.558(1). West and Abdullah are plainly such candidates, and are exempt from the AOI filing requirement.

The Secretary of State and Director argue in their brief that, even if the Court of Claims correctly interpreted MCL 168.558(1), mandamus relief would still not be appropriate because judicial interpretation of the statute was required, and so the Secretary of State and Director cannot be said to have had a clear legal duty. But as this Court has explained, the right to mandamus relief does not disappear because a difficult legal question is at play. In the context of a request for mandamus relief, a " 'clear legal right' is a right that is 'clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts *regardless of the difficulty of the legal question to be decided*.' " *Neilson v Bd of State Canvassers*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 371256); slip op at 4, quoting *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 519; 866 NW2d 817 (2014) (emphasis added).

## D. CHALLENGES TO THE AOIS FILED BY WEST AND ABDULLAH

Between the various challengers to West's candidacy, a number of arguments have been raised to the sufficiency of West's and Abdullah's AOIs. Holliday argues that West's AOI was not correctly notarized. The Secretary of State and Director similarly argue that the notarization of West's AOI was invalid, as explained by the Director in his August 16, 2024 letter. The MDP argues that the notarization of West's AOI was defective. And, the MDP argues that West's and Abdullah's AOIs both failed to comply with the Michigan Election Law because West and Abdullah failed to disclose their party affiliations in other states, and that Abdullah's AOI further violates the Michigan Election Law because she wrote on the AOI that she wished for her name to appear on the ballot as "Cornel West".

All of these challenges are subsumed by this Court's holding that neither West nor Abdullah was required to file an AOI in the first place. MCL 168.558(4) prohibits certification of candidates "who fail[] to comply with this section," or who "execute[] an affidavit of identity that contains a false statement with regard to any information or statement required under this section." But where West and Abdullah did not have any obligation to file an AOI, neither failed to comply with MCL 168.558, nor has either executed an AOI containing a false statement with regard to any information that either was required to provide. We thus decline to reach the underlying challenges to the AOIs themselves.

E.  MCL 168.692a

Holliday raises an additional challenge premised on MCL 168.692a and the fact that West and Abdullah are currently running for President and Vice President of the United States in several other states, but as candidates affiliated with various political parties.  Holliday contends that MCL 168.692a precludes West and Abdullah from seeking placement on Michigan's ballot as independent candidates while simultaneously running for the same offices in other states as candidates affiliated with political parties.  We disagree.

This issue again turns on interpretation of a statute.  As explained previously, in Michigan, West and Abdullah are seeking placement on the ballot as independent candidates via the qualifying petition method of nomination provided by MCL 168.590 *et seq.*, which is chapter XXIVA of the Michigan Election Law.  With that in mind, MCL 168.692a provides:

> A person who files a partisan nominating petition or filing fee as a candidate of a political party, or who is nominated by a political party convention, committee, or caucus and accepts the nomination, shall not file a qualifying petition under chapter XXIVA for an office to be elected at that election or at an election held during the same calendar year.

The Court of Claims did not address MCL 168.692a in its decision, although it did conclude that West's and Abdullah's AOIs were not defective because of a failure to identify that they were running as affiliated candidates elsewhere.  As explained, we need not be concerned with whether the AOIs filed by West and Abdullah complied with Michigan law because neither candidate was obligated to file an AOI in the first place.  Yet this does not resolve the challenge made under MCL 168.692a.  MCL 168.692a is a prohibition against certain candidates filing qualifying petitions to run as independent candidates in Michigan.  Given that West and Abdullah seek placement on the ballot by filing qualifying petitions under chapter XXIVA, the question is whether MCL 168.692a disqualifies them from doing so.[15]

There is no doubt that West and Abdullah are seeking election to the same offices of President and Vice President of the United States, in this year's election, and in other states.  And, there is likewise no question that in a number of other states, they are doing so as candidates affiliated with various political parties.  Holliday contends that a plain reading of MCL 168.692a means that, by running as affiliated candidates in other states in this election cycle, West and Abdullah cannot simultaneously be placed on the ballot in Michigan as independent candidates.  Holliday argues that the statute "refers to 'a' political party without geographical restriction or

---

[15] Holliday argues at length that disaffiliation statutes (statutes that require one to disassociate from political parties for a period of time if running as an independent candidate) are constitutionally permissible.  We need not decide whether this statute is a constitutional exercise of the Legislature's authority to resolve this matter, and as such, do not address any constitutional concerns.  See *Dep't of Health and Human Servs v Genesee Circuit Judge*, 318 Mich App 395, 407; 899 NW2d 57 (2016) (explaining that under the rule of constitutional avoidance, "we first consider whether statutory or general law concepts are . . . dispositive" before reaching constitutional issues).

limit as to type—national, state, or local. It is *not* restricted to being the candidate of a political party *in Michigan*." Holliday explains that the Legislature could have limited the scope of MCL 168.692a geographically, by referring to candidates of Michigan political parties or to those nominated at conventions or caucuses held in Michigan. Holliday contends that limiting the geographic scope of the statute to Michigan would amount to adding language to the statutory text that the Legislature did not include.

We conclude that MCL 168.692a does not prohibit West from seeking placement on the ballot in Michigan as an independent candidate. This Court must discern the meaning of MCL 168.692a from the plain text of that statute. But context matters, and it this Court cannot "cherry-pick" words and phrases from the statute and read them in isolation from the rest of the text. *TruGreen Ltd Partnership v Dep't of Treasury*, 338 Mich App 248, 256; 979 NW2d 739 (2021). "This focus on the big picture echoes a primary canon of construction: the individual, discrete words of a statute must be read holistically 'within a view to their place in the overall statutory scheme.' " *Id*. at 257, quoting *Davis v Mich Dep't of Treasury*, 489 US 803, 809; 109 S Ct 1500; 103 L Ed 2d 891 (1989). As the Michigan Supreme Court has explained:

> The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. Moreover, when considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. While defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. [*Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) (quotation marks and citations omitted)].

Reviewing MCL 168.692a in the context of the entire statutory scheme, we conclude that the intent of the statute is to preclude those who seek to run *in Michigan* as an affiliated candidate from also running as an independent candidate *in Michigan* during the same calendar year. MCL 168.692a identifies those affected by the prohibition as those who file "a partisan nominating petition or filing fee as a candidate of a political party, or who is nominated by a political party convention, committee, or caucus and accepts the nomination . . . ." It is true that there is no geographical limitation expressly stated in the statute. But that limitation is apparent from context.

As a starting point, the Legislature's authority is to regulate elections in Michigan, not in other states. See US Const, art 1, § 4, cl 1; 1963 Const, art 2, § 4. See also *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 18-19; 740 NW2d 444 (2007) (explaining that states "retain the power to regulate state and local elections, subject to federal constitutional and statutory limitations"). Thus, in enacting the Michigan Election Law, we presume that the Legislature's focus was on regulating *Michigan* elections and not any attempt at regulating those of other states. See *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014) ("Statutes are presumed to be constitutional . . .").

With that in mind, MCL 168.692a begins by referring to those who file a "partisan nominating petition or filing fee . . . ." While not explicit in the statute, that is a clear reference to the filing of a nominating petition and filing fee *in Michigan*, not the filing of similar documents or fees in any other state. The next part of the sentence refers to those who are "nominated by a political party convention, committee, or caucus and accept the nomination . . . ." Again, the statute fails to specifically reference those events occurring in Michigan, but that seems apparent from context. The statutes in the Michigan Election Law that immediately precede MCL 168.692a clearly refer to party conventions and caucuses held in Michigan. MCL 168.686 explains that the state central committee of each political party must canvass the proceedings of its state convention and determine its nominees. The committee must then forward a list of candidates nominated to the Secretary of State. MCL 168.686.[16] MCL 168.686a describes the process for certain parties to nominate candidates via county caucus or state convention. And MCL 168.686b explains, with regard to the nomination process of candidates of minor political parties:

> A political party that is not a major political party, as defined in section 16, and that is required to nominate candidates at a county caucus or state convention shall, at least 10 days before holding the county caucus or state convention to nominate candidates, notify in writing the secretary of state and the bureau of elections of the date, time, and location of the county caucus or state convention of that political party.

What is clear is that these statutes are discussing how candidates are selected to be placed on *Michigan* ballots.

Reading the whole statutory scheme, and not isolated words in MCL 168.692a, we conclude that MCL 168.692a does not prohibit those who seek political office as affiliated candidates in other states from seeking office in Michigan as independent candidates. It is clear from the overall context of the Michigan Election Law that MCL 168.692a seeks to prohibit those who run as affiliated candidates *in Michigan* from then running as independent candidates in Michigan for offices "to be elected at that election or at an election held during the same calendar year." Here, West and Abdullah have only filed qualifying petitions to run in Michigan as independent candidates. That they also are running in other states as affiliated candidates does not run afoul of MCL 168.692a.

## F. INTRA-PARTY DISPUTE

Finally, Holliday asserts that West cannot appear on the ballot in Michigan because of an intra-party dispute involving different factions of the Natural Law Party. We disagree.

---

[16] MCL 168.686 also contains provisions directing the state committee to forward candidates for President and Vice President of the United States to the Secretary of State after national conventions are held to determine those candidates. But again, the statute refers to action by a *state* committee to place a candidate on a *Michigan* ballot. And in any event, West and Abdullah have not been nominated for the offices sought at a national convention.

-17-

Holliday's brief explains that, and by reference to news articles, there is a dispute among "factions" of the Natural Law Party. Holliday explains that West sought the nomination of the Michigan Natural Law Party, but did not obtain it; the Michigan Natural Law Party selected Robert F. Kennedy, Jr. as its presidential candidate. The Natural Law Parties of Florida and Mississippi have selected West as their nominee. Holliday argues that the state need not resolve that intra-party dispute; rather, under *American Indep Party v Secretary of State*, 397 Mich 689; 247 NW2d 17 (1976), the burden is on the feuding political party to resolve its internal fight and present a single candidate for president. Holliday accuses West of trying to circumvent that rule by filing as an independent candidate in Michigan.

Notably, *American Indep Party* involved two factions of the same political party *in Michigan*. As the opinion explains:

> The American Independent Party is entitled to a column on the 1976 general election ballot because of the vote its principal candidate received in the 1974 general election. MCLA § 168.685; MSA § 6.1685. On March 6, 1976, the State Central Committee, chaired by Vern G. Morse, called the 'fall' state convention. MCLA § 168.598; MSA § 6.1598. That same day a faction of the American Independent Party headed by Josephine Chapman split, formed its own State Central Committee, and called its own state convention. This faction apparently considered itself entitled to the name 'American Independent Party' and made no attempt to qualify as a new party under MCLA § 168.685.

> Each faction held a convention, nominated candidates for state offices for the 1976 general election ballot, and presented its slate to the State Director of Elections under the vignette and name of the American Independent Party of the State of Michigan. The director advised each that he would accept An American Independent Party slate certified by both chairmen. [*American Independent Party of Mich*, 397 Mich at 692-693.]

The Supreme Court explained that the Legislature had provided means for a new party to obtain a place on the ballot, while "old parties may continue on the ballot. Only one American Party has qualified for a column." *Id*. at 695. The Court held that the Director "correctly left to the American Independent Party the resolution of the intra-party dispute." *Id*. at 696.

In the present case, there is no intra-party dispute in Michigan. Accepting Holliday's factual statements as true, West sought the nomination of Michigan's Natural Law Party. He did not obtain it, and instead the nomination went to Robert F. Kennedy, Jr. West now seeks to run as an independent candidate. That leaves no intra-party dispute to be resolved in Michigan. There simply is no dispute in Michigan between competing factions of a single party. *American Indep Party of Mich* thus does not provide any means of relief to Holliday.

## III.  CONCLUSION

Finding no errors warranting relief, we affirm the Court of Claims' opinion and order.

/s/ Noah P. Hood
/s/ Anica Letica
/s/ Adrienne N. Young